STATE of Missouri, Respondent,

v.

Lloyd G. MILLER, Appellant.

No. WD 33155.

Missouri Court of Appeals, Western District.

March 22, 1983.

As Modified May 31, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 31, 1983.

Application to Transfer Denied June 30, 1983.

Gerald M. Handley, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before WASSERSTROM, P.J., and TURNAGE and CLARK, JJ.

CLARK, Judge.

Lloyd G. Miller was tried before a jury, was convicted of murder in the second degree and sentenced to a term of ten years. On this appeal, Miller contends the court should have directed acquittal because the evidence made a case of self-defense as a matter of law. He also argues, alternatively, that he is entitled to a new trial because of error in the scope of cross-examination. Affirmed.

A detailed account of the events which culminated in the death of one Russell Dumbelton on August 17, 1980 is necessary to an understanding of the issues. The evidence presented the following facts.

Miller and Dumbelton were adjoining property owners in an area of small acreage plots near urban Kansas City. Miller was retired and raised bees and a few head of cattle. At about midnight on August 16/17, at the time of an approaching thunderstorm, Miller drove to his pasture to locate a cow which he thought had strayed. He parked his pickup truck in the pasture at a point some 170 feet north of the fenceline at the north boundary of Dumbelton's property with the truck headlights shining toward Dumbelton's house. Apparently angered by the light shining in his window, Dumbelton picked up a 30.03 rifle and went out to his front yard. Those of Dumbelton's family in the house soon heard a gunshot.

The physical evidence and Miller's own testimony coincide to establish what next occurred. The first shot was fired by Dumbelton from his rifle, the expended shell casing being later recovered in the front yard of Dumbelton's house. Within a few seconds and after occupants of Dumbelton's house heard shouts, another shot was fired. This second discharge was from Miller's rifle and Dumbelton fell, mortally wounded in the chest.

The body of Dumbelton was ten feet from the fence and 72 feet from the front door of his house. Near the body was Dumbelton's rifle with a live round in the chamber and five shells in a clip. According to Miller's testimony, he saw Dumbelton come out of his house, load his rifle and fire a shot at Miller. At the time, Dumbelton was exposed in the headlights of Miller's truck. After the first shot, Miller ran toward his truck, saw Dumbelton reload and aim the weapon toward Miller. Miller obtained his rifle and from a position beside his truck, he fired at Dumbelton inflicting the fatal wound. A shell casing from Miller's rifle was found behind the left rear wheel of Miller's truck. When officers arrived, Miller was excited and said he "didn't mean to shoot the man."

### I.

Appellant first contends under the above facts the defense of self-defense was established as a matter of law because the evidence was not controverted and the elements of justification were conclusive. This contention requires a restatement of some principles underlying the special negative defense of self-defense. That doctrine appears in § 563.031, RSMo 1978. In substance, the concept places the burden on the accused to inject the issue of justification in the case. Thereafter, the burden is on the state to prove the absence of self-defense beyond a reasonable doubt. *State v. Buckles,* 636 S.W.2d 914, 924 (Mo. banc 1982). In *State v. Simms,* 602 S.W.2d 760 (Mo.App.1980), this court reviewed the authorities which bear on the issue when the accused contends he is entitled to a directed

verdict on the ground of self-defense. Borrowing from that opinion: (1) What constitutes self-defense in a particular case, as an abstract principle, is generally a question of law, (2) The issue of self-defense is tendered to the jury where the evidence is conflicting or of such a character that different inferences might reasonably be drawn therefrom, (3) Rarely is self-defense declared by law so as to bar the submission of the homicide offense altogether.

The elements of self-defense are absence of aggression or provocation on the part of defendant, a necessity, real or apparent, for defendant to employ deadly force to save himself from immediate danger of serious bodily injury or death and reasonable cause for such belief. *State v. McGowan,* 621 S.W.2d 557, 559 (Mo.App. 1981). In addition, where defense of habitation is not involved, it must appear that the defendant did everything in his power, consistent with his own safety, to avoid the danger and he must retreat if retreat is practicable. *State v. Ivicsics,* 604 S.W.2d 773, 776 (Mo.App.1980).

By any measure, the collective evidence in this case presented an issue of self-defense, it being unquestioned that the victim, Dumbelton, had fired his rifle once and was advancing toward Miller, weapon loaded and pointed. Whether Miller was entitled to a directed verdict, however, depends on assessment of the other factors of provocation and retreat. If the state presented substantial evidence inconsistent with Miller's theory of justification, the question was one for the jury. *State v. Ford,* 491 S.W.2d 540, 542 (Mo.1973). We therefore consider the state's evidence on these aspects in the light favorable to the verdict. *State v. Buckles,* supra at page 924.

The state contended Miller was the aggressor in the shooting despite the facts, undeniably established by the evidence, that Dumbelton had fired first and was advancing on Miller with the rifle pointed in Miller's direction. It was the prosecution contention that Miller's act in parking his truck with the headlights shining on Dumbelton's

house demonstrated that Miller intended to provoke a confrontation and was thus to be denied that defense of self-defense. The state also argues in its brief that the theory of provocation was buttressed by the general characterization of Miller as one who had repeatedly attempted to goad other neighbors into gunfights with the intention of killing them and then claiming self-defense.

This latter contention by the state fails because the record is devoid of any evidence whatever confirming any disputes between Miller and other neighbors and no proof that Miller was prone to use of firearms or had ever challenged anyone to a contest of weapons. The only question put to any witness on the subject was that asked of Miller on cross-examination, discussed below and Miller's response was in the negative.

The state's evidence on express provocation of Dumbelton by Miller consisted first of Miller's placing his truck in the position to project the headlights upon the window of the Dumbelton residence at a late hour and an incident the previous day in which Miller had upset beehives with a consequent swarming upon the Dumbelton property. Dumbelton had filed a complaint and pursuant to that, a warrant for Miller was issued. Miller too was disturbed about the bee incident as indicated by his telephone conversation with a police officer about the warrant. Any connection between the complaint and warrant and Miller's conduct the night of the shooting, however, is tenuous at best. Given its most favorable inferences, the state's evidence did not show beyond a reasonable doubt that Miller was the aggressor or that he provoked the fatal confrontation with the victim.

In the final aspect of justification for use of deadly force, however, the evidence did make a jury issue because the proof would support a conclusion that Miller did not avail himself of a practicable opportunity to retreat. As the evidence showed, Dumbelton was at least 200 feet from Miller when the first shot was fired and Dumbelton's sight was restricted because of the truck headlights he was facing. Moreover, Miller

had sufficient time to enter the truck to obtain his rifle, by his own account, and then return to a position to fire at Dumbelton. The jury could readily have found that Miller could, in the same time interval, have started the truck and driven off or have otherwise placated Dumbelton by turning off the headlights or indicating in some other way by act or work his withdrawal from the episode.

■ The issue of withdrawal or retreat being a viable one for jury resolution, it necessarily follows that Miller was not entitled to a directed verdict of acquittal on the defense of self-defense as a matter of law.

II.

In his second point, Miller contends the trial court erred in overruling his objection and motion for a mistrial when the prosecuting attorney asked Miller on cross-examination:

"Mr. Miller, a few days before Russell Dumbelton was shot, did you attempt to provoke Mr. Cliff Johnson into a fight using your rifle?"

Miller claims the question was improper because the subject was a collateral matter involving a previous offense and the question tainted the jury's view of Miller's defense of self-defense. Some additional details of what occurred at trial in the questioning of Miller are necessary to place the issue in perspective.

Miller had filed a motion in limine to exclude all evidence bearing on confrontations between him and other neighbors, evidence which would otherwise have supported the state's theory that Miller had pursued a planned campaign of provocation. In a recorded pre-trial discussion, however, the state acceded to the motion and agreed to question none of its witnesses about the subject. When Miller was cross-examined, however, the prosecutor repeatedly attempted to extract admissions from Miller as to his disputes with other neighbors by questions, as:

"Q. In other words, you believe that you would have the right in this day and age

to provoke an incident—and stay on your own property and then take the advantage that you created and injure somebody?

Q. Have you ever provoked anything while you have been on your own property?

Q. Have you ever attempted to provoke any of your other neighbors?"

To each of the above questions, objection by the defense was sustained.[1] Finally, the prosecutor posed the question quoted first in this section of the opinion and Miller answered:

"I did not that I recall."

In rebuttal, the state called Cliff Johnson, the neighbor mentioned in the question asked of Miller, but Johnson was not questioned about any confrontation with Miller and there was no attempt to impeach Miller's answer to the cross-examination inquiry about disputes between Miller and neighbors and nothing in the record on the subject other than the questions put to Miller and the single response.

Miller relies on *State v. Earvin,* 510 S.W.2d 419 (Mo.1974) and similar cases for the proposition that evidence regarding a dispute between the defendant and parties having no connection with the charge for which defendant is on trial is admissible. *Earvin* and *State v. Maddox,* 339 Mo. 840, 98 S.W.2d 535 (1936), also cited by Miller, are distinguishable because in each case the state offered rebuttal evidence for the purpose of impeaching the defendant's response. Here, the state assumed it was bound by Miller's answer to the question and the subject was not pursued. The cited cases do not aid Miller.

■ We need not consider whether questioning Miller about a dispute with another neighbor was an excursion into a prohibited area of other unrelated offenses, but limit our opinion to the issue of whether the

question and response were of sufficient prejudice to Miller to require a mistrial. We give no consideration to the questions of the prosecutor as to which defense objections were sustained because Miller made no request there for a mistrial and he may not now complain of error in failure of the trial court to take action not requested. *State v. Pulis,* 579 S.W.2d 395 (Mo.App. 1979).

The record on the cross-examination of Miller is somewhat confusing and indecisive. After overruling the defense objection to the question concerning a confrontation between Miller and Cliff Johnson, the trial court apparently reconsidered and offered to sustain the objection and instruct the jury to disregard the question and answer. The admonition to the jury was not given because Miller insisted on a mistrial. At this point, the state joined in the request for mistrial but, for reasons not expressed in this record, the court refused to accede.

■ Because of the prosecutor's agreement before the trial commenced, there was no evidence in the case, apart from the single question put to Miller, of quarrels between Miller and other persons and no evidence that Miller had sought other opportunities for gun play. Considering the limited information gained by the jury from the single question quoted above and the fact that Miller's disavowal of knowledge of the occurrence was accepted without more, we cannot conclude that the drastic remedy of a mistrial was required. Moreover, the evaluation of whether the prejudice was such that no remedy short of a mistrial would suffice was one for the trial court in the first instance. The trial court is in a much better position to evaluate the effect of what has occurred and that decision will rarely be disturbed by appellate overview. *State v. O'Neal,* 618 S.W.2d 31 (Mo.1981). Here, the record demonstrates no manifest necessity to declare a mistrial and the trial

---

1. Miller makes no claim here of prosecutorial misconduct in the repeated attempts by the prosecutor to invade an area which the rulings by the trial judge had prohibited. We thus have no issue comparable to subjects considered in *State v. Burns,* 286 Mo. 665, 228

S.W. 766 (1921) and *State v. Selle,* 367 S.W.2d 522 (Mo.1963). Moreover, the prosecutor's efforts were eventually successful because, inexplicably, the trial judge eventually permitted a similar question to be asked and an answer obtained.

court will not be charged with error for failing to do so.

Substantial discussion in briefing and argument of this case was devoted to the question of whether the state was entitled to "collaterally impeach" Miller by showing his attempts to provoke other neighbors. That subject need not be addressed because the state voluntarily limited its evidence to exclude any such proof and objections to questions put to Miller on cross-examination were sustained, albeit belatedly as to the final question.

The judgment is affirmed.

All concur.