STATE of Missouri,
Plaintiff–Respondent,

v.

Arthur Ray LUCKINBILL,
Defendant–Appellant.

No. 15062.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 4, 1988.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Gary M. Wilson, Asst. Public Defender, Springfield, for defendant-appellant.

HOGAN, Judge.

A jury has found defendant Arthur Ray Luckinbill guilty of assault in the second degree as defined and denounced by § 565.060.1(1), RSMo 1986, and has assessed his punishment at imprisonment for a term of three (3) years. The jury further determined that the defendant should pay a fine, the amount to be determined by the court. The court assessed defendant's fine at the amount of $500. The defendant appeals, contending that the evidence shows, as a matter of law, that he acted in self-defense. Believing that the State presented substantial evidence which was inconsistent with the defendant's theory of justification, we affirm.

The incident which gave rise to this prosecution occurred in the early morning of July 4, 1986. The victim of the assault was one Allen R. Burns[1], a 26–year–old bartender who lived in north Springfield. Burns and the defendant were acquainted because they had both lived in or near West Plains, Missouri. Defendant Luckinbill was a 37–year–old veteran of the Vietnamese conflict. At trial time he "did household appliance repair, plumbing repair and air conditioning and heating repair. . . ."

Burns attended a cookout at his sister's residence during the afternoon and evening of July 3. On his way home, he stopped at a bar for a drink. He encountered the defendant and the defendant's female companion, Lynn Green. Burns, the defendant and Miss Green conversed and had several drinks. When the defendant and Miss Green decided to leave, the defendant invited Burns to meet him and his companion at the defendant's residence. Burns did so.

After the defendant, Miss Green and Burns arrived at the defendant's house, they were joined by Wendy Brown, a young woman who lived in the neighborhood. Burns discovered that he had no cigarettes. He asked Miss Brown to go with him to purchase cigarettes, because he was not familiar with the city. Miss Brown agreed to go.

Burns purchased cigarettes and returned to the defendant's residence. As Burns "pulled into the driveway" he heard a woman screaming. Burns got out of his car, went up to the front door and opened the screen. Very shortly Miss Green emerged; the defendant "[followed] her right out the door." Burns was somewhat confused concerning the sequence of events at this point, but he believed that Miss Green was pushed down the steps to the front porch. Miss Green testified that the defendant "pushed [her] down the stairs." Burns remonstrated with the defendant; upon trial, Burns' recollection was that he said ". . . what the hell are you doing, that's a woman, you know, you're not supposed to do that."

Burns testified, quite specifically and without equivocation, that he had no weapon, did not strike or threaten the defendant, and attempted to avoid physical contact with the defendant. Burns testified as follows:

. . . . "Q You didn't swing at him with a fist?

A No.

Q Did you have any weapon on you?

A No.

Q Did you have a gun?

---

1. The victim's name is variously spelled. In the information, his name is stated to be "Allen R. Burns." In the transcript, his name is spelled "Alan Ray Burnes." For convenience, we use the spelling found in the information.

A No.

Q A knife?

A No.

Q A club?

A No.

Q You didn't have any weapon on you?

A No.

Q You didn't swing anything at him?

A No." ....

Miss Green got up, and the defendant "started pushing at [Burns]." Burns backed up, attempting to avoid the defendant. As Burns put it, "[H]e just kept coming towards [sic] me and every time he tried to get close to me, I'd try to push him away from me." Burns' intention was "to get to my car and get the heck away from there." As Burns retreated through the yard toward his automobile, the defendant produced a knife and stabbed Burns in the chest. It was stipulated that Burns' chest wound required surgery and hospitalization for 11 days.

To reiterate, the narrow question before the court is whether the State presented substantial evidence which was inconsistent with the defendant's theory of justification. If so, the question whether the defendant acted in self-defense was a question for the jury. *State v. Miller*, 653 S.W.2d 222, 224 (Mo.App.1983); *State v. Jackson*, 522 S.W.2d 317, 319 (Mo.App. 1975).[2]

The defendant's evidence was that while Burns and Wendy Brown were out buying cigarettes, he and Miss Green began fighting. When Burns returned, according to the defendant, defendant stepped out on the porch to order Burns to leave. Burns "grabbed [defendant] by the throat and started choking [defendant] and striking [defendant] on the left and right side of the head." According to the defendant, Burns' attack was of such intensity that he was obliged to defend himself with a knife.

It has been held that the elements of self-defense are the absence of aggression or provocation on the part of the defendant, a necessity, real or apparent, for the defendant to employ deadly force to save himself from immediate danger of serious bodily injury or death and reasonable cause for such belief. In addition, where defense of habitation is not involved, it must appear that the defendant did everything in his power, consistent with his own safety, to avoid the danger and he must retreat if retreat is practicable. *State v. Miller*, 653 S.W.2d at 224; *State v. Jackson*, 522 S.W.2d at 319. If the jury had accepted the defendant's testimony, the elements of self-defense, or at least some of them, might have been found to exist. If Burns' testimony is accepted, defendant cannot have acted in self-defense. In the final analysis, the defendant is asking this court to rule that the jury should have accepted his testimony rather than that of his victim. This is a criminal appeal. We may neither weigh the evidence nor determine the credibility of the witnesses. *State v. Williams*, 376 S.W.2d 133, 136 (Mo.1964); *State v. Danforth*, 654 S.W.2d 912, 915 (Mo.App.1983). Inasmuch as there was credible evidence that the defendant did not act in self-defense, we must affirm the judgment. It is so ordered.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.

---

**2.** The jury was instructed on self-defense as a justification; MAI–CR2d 2.41.1, appropriately modified, was given as Instruction No. 10.