WILLIAM W. FRANCIS, JR., P.J.
Brian Shawn Jones ("Jones"), appeals his convictions of second-degree murder and armed criminal action. Jones asserts that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence in that there was insufficient evidence to support his convictions of second-degree murder and armed criminal action. Finding no merit to Jones' points, we affirm the judgment of the trial court.
Factual and Procedural History
We summarize the evidence in the light most favorable to the judgment. State v. Lammers , 479 S.W.3d 624, 632 (Mo. banc 2016). We recite other evidence as necessary for context.
Jones and his girlfriend ("girlfriend") were methamphetamine addicts, and were living together. On October 6, 2014, they wanted to buy some methamphetamine. To that end, girlfriend contacted J.M., who had none to sell. J.M. then contacted S.G., who also had none to sell, but had a friend (Victim) she could contact. S.G. contacted Victim, a twenty-year old man, and he agreed to supply methamphetamine for the transaction.
S.G. was to purchase an "eight ball" (three-and-a-half grams of methamphetamine in a "baggie") from Victim for "between [$]150 or [$]160[,]" and was then to resell the eight ball to Jones for "between [$]190 and [$]200[.]" J.M. was then to barter some computer equipment to Jones in exchange for a portion of the eight ball. The four companions picked up Victim, and dropped him off at a house where Victim sometimes stayed. The others remained in the car, where the transaction was to proceed upon Victim's return with the eight ball.
Victim came out of the house and walked to the car. He opened the rear-passenger door and got in, leaving the rear-passenger door open. Jones was in the driver's seat, girlfriend was in the front-passenger seat, J.M. was in the driver-side rear seat, S.G. was in the rear-middle seat, and Victim was in the rear-passenger seat. Victim handed Jones a scale and the eight ball. Jones put the scale on his lap, and began to weigh the eight ball.
There was no "arguing going on[.]" Victim did not say "anything threatening," did not have a "gun on him," did not have "anything that look[ed] like a gun[,]" and did not have anything "sticking out of his waistband[.]"
*912 Jones pulled out a pistol, pointed it in the direction of the back seat, and ordered the occupants out of the car. Girlfriend, J.M., S.G., and Victim were stunned. J.M. asked, "Is this a joke?" because "everything[ ] [had] been going well. There[ ] [had] been really no issues, and then [Jones] brings out a gun." Jones responded, "Does this look like a joke[?]" Victim had "nothing in his hands[,]" and looked "bewildered, like he [was] not quite sure what to do or what's going on or like he's not prepared to just get out of the car."
Then "Jones got greedy and started shooting everybody." "[A]s [J.M.] and [S.G.] were jumping out, [Jones] was already firing at [Victim]." Jones shot Victim twice in the chest and once in the groin-he shot S.G. once in her right hand. J.M. and S.G. made it out of the car.
J.M. and S.G. tried to hide, fearing that Jones would "keep shooting" so that he would not "leave any witnesses[.]" Girlfriend remained in the car, but was "worried [Jones] might shoot [her] next[.]"
Jones "punched the gas" toward the dead-end of the street. He "did a U-turn" in a neighbor's yard, running over some "big rocks ... that lined ... the road from the grass[.]" The rear-passenger door was still open, and Victim was slumped over, "half hanging out of the car." Jones yelled to girlfriend to "[g]et [Victim] out of the car." She "dragged [Victim] out and they sped off."
J.M., S.G., and J.P. (the owner of the house where Victim was staying) ran to Victim, who was non-responsive and struggling to breathe. Police arrived shortly thereafter. J.M., S.G., and J.P. were standing by Victim's body. "They were very upset and distraught[,]" "yelling [Victim's name] over and over again." Victim was transported to a hospital where he died from his injuries. Victim did not have any weapons on his person, and none were found at the scene.
After fleeing the scene with girlfriend, Jones drove to the house where they were living with M.P., a friend. Jones told girlfriend "she needed to get whatever she was going to get because [Jones] wasn't coming back [there] no more." Girlfriend complied. When she was finished, girlfriend found Jones in the garage, removing "casings or shells" from the car. Jones would later claim he was trying to remove anything "illegal." He never told girlfriend that he shot Victim in self-defense, never mentioned anything about Victim having (or seeming to have) a weapon, and never showed girlfriend a BB gun he later alleged to have found in the car.
Jones hid and actively fled from authorities for some time, but was eventually apprehended. The car Jones was driving contained the pistol Jones used to shoot Victim and S.G. The vehicle did not contain drugs or any other weapons.
Jones was charged as a prior and persistent offender with one count of murder in the second degree and one count of armed criminal action.
A three-day jury trial commenced on December 5, 2016. Jones testified in his own defense. The defense theory of the case was that Jones shot Victim in self-defense after Victim pulled a BB gun. In support, Jones testified that when he was removing items from his car at M.P.'s house, he found Victim's black backpack and BB gun. He put the backpack in his trunk, and placed the BB gun on top of the refrigerator in M.P.'s house.
Additional evidence was adduced from witness Darik Thibodeau, a long-time friend of Victim. Thibodeau testified that Victim possessed a black backpack and a BB gun, and Thibodeau had seen Victim earlier in the day of the shooting with the *913 BB gun tucked in his waistband. Sergeant Brandon Cole testified that a search of Jones' car yielded a black backpack, containing two to three dozen BBs. Several BBs were also found under the back seat. Two CO2 air cartridges, typically used to power a BB gun, were found in the front-passenger floorboard.
Jones moved for judgment of acquittal at the close of the State's evidence and at the close of all the evidence, and the trial court denied both motions. The jury found Jones guilty of both counts. The trial court found Jones to be a prior and persistent offender, and sentenced Jones to life imprisonment on the second-degree murder conviction, and ten years' imprisonment for the armed criminal action conviction, with the sentences to run concurrently.
In two points on appeal, Jones asserts the trial court erred in overruling his motion for acquittal at the close of all the evidence: (1) as to the charge of murder in the second degree, because the evidence was insufficient to show that Jones did not act in self-defense when he shot Victim; and (2) as to the charge of armed criminal action, because a prerequisite element of that charge is absent without the murder in the second degree conviction.
Standard of Review
Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt. This Court considers all evidence in the light most favorable to the verdict and grants the State all reasonable inferences. Contrary evidence and inferences are disregarded. The Court will not supply missing evidence or grant the State unreasonable, speculative, or forced inferences.
Lammers , 479 S.W.3d at 632. We do not weigh the evidence anew on appeal, as that function is reserved for the exclusive province of the fact-finder in a criminal case. See State v. Letica , 356 S.W.3d 157, 167 (Mo. banc 2011).
"The State may prove its case by presenting direct or circumstantial evidence. Upon appellate review, circumstantial evidence is given the same weight as direct evidence and the fact-finder may make reasonable inferences from the evidence presented." State v. Cordell , 500 S.W.3d 343, 345 (Mo.App. S.D. 2016). "All decisions as to what evidence the jury must believe and what inferences the jury must draw are left to the jury, not to judges deciding what reasonable jurors must and must not do." State v. Jackson , 433 S.W.3d 390, 399 (Mo. banc 2014). "[T]he jury may believe or disbelieve all, part, or none of the testimony of any witness." Id. at 403 (internal quotation and citation omitted).
Analysis
Sufficiency of the Evidence on the Self-Defense Theory
In his first point, Jones argues that the evidence was insufficient to support his conviction of murder in the second degree, in that the State failed to adduce sufficient evidence to prove beyond a reasonable doubt that Jones "did not act in self-defense in killing [Victim]." Jones therefore suggests that the trial court erred in denying his motion for acquittal at the close of all the evidence, and thereafter submitting the issue to the jury.[1]
*914 "[I]f substantial evidence is presented of the elements of self-defense, then the issue is injected and self-defense must be submitted by instructing the jury that the State has the burden of proving a lack of self-defense beyond a reasonable doubt." State v. Bruner , 541 S.W.3d 529, 530 (Mo. banc 2018). "Self-defense is an issue for the fact-finder when there is conflicting evidence or different inferences could be reasonably drawn from the evidence." State v. Wiley , 337 S.W.3d 41, 46 n.8 (Mo.App. S.D. 2011).
In support of his argument, Jones cites State v. Morley , 748 S.W.2d 66 (Mo.App. S.D. 1988), which provides framework to the instant challenge:
Generally, where the evidence is conflicting, the issue of self-defense is one for the jury. Acquittal of an accused by reason of self-defense as a matter of law, so as to bar submission of the charged offense to the jury, is relegated to those exceptionally rare instances where all the undisputed and uncontradicted evidence clearly establishes self-defense. Rarely is self-defense declared by law so as to bar the submission of the homicide offense altogether .
Id. at 68 (internal quotations and citations omitted) (emphasis added).
Jones also cites State v. Miller , 653 S.W.2d 222 (Mo.App. W.D. 1983), which offers effective supplementary guidance:
(1) What constitutes self-defense in a particular case, as an abstract principle, is generally a question of law, (2) The issue of self-defense is tendered to the jury where the evidence is conflicting or of such a character that different inferences might reasonably be drawn therefrom , (3) Rarely is self-defense declared by law so as to bar the submission of the homicide altogether.
Id. at 224 (emphasis added).[2] Miller is also instructive for its implicit recognition that if any element of self-defense is put at issue by the evidence (or its reasonable available inferences), self-defense is "viable ... for jury resolution[.]" Id. at 225.[3]
Jones' theory of self-defense was as follows. Jones claimed Victim began to draw a pistol (which Jones later discovered to be a BB gun). Jones drew his own pistol (which was a functional firearm), and shot Victim three times. As defense counsel tersely theorized in closing argument, "[i]f someone pulls out a BB gun, [and] you believe that BB gun is real, you get to shoot them."
In his argument section, Jones premises his challenge on two pieces of evidence,[4] *915 which he asserts to be "undisputed and uncontradicted":[5]
• "Darik Thibodeaux, who described himself as [Victim's] best friend, testified that [Victim] possessed a black backpack and a BB gun, which he was carrying tucked in his waistband on the day of his death[ ]"; and
• "Sergeant Brandon Cole testified that his search of [Jones'] car yielded a backpack containing two to three dozen BBs; he also found several BBs under the back seat of the car, and two air cartridges on the front passenger floorboard, which are typically used to power a BB gun."
(internal citations to the record are omitted).
This argument misapprehends the burden of proof associated with the issue of self-defense, and the standard for a challenge to the sufficiency of the evidence to support a conviction. Generally speaking, "burden of proof" is shorthand for the dual burdens of production and persuasion . See State v. Latall , 271 S.W.3d 561, 564 (Mo. banc 2008). Respectively-as applicable here-they refer to functions of judge and jury in a jury-tried criminal case. "The term 'burden of production' tells a court which party must come forward with evidence to support a particular proposition, whereas 'burden of persuasion' determines which party must ... convince" the jury to believe its evidence, and to weigh the credited evidence in its favor. Id. (internal quotation and citation omitted).
"Whether a party has satisfied its burden of production is not an issue of fact for the jury; it is an issue of law[ ]" for the trial court. Id. at 565 (internal quotation and citation omitted). A motion for acquittal on the basis of insufficient evidence is necessarily directed at the State's failure to meet its burden of production-i.e. , at the absence of an evidentiary basis for the jury's fact-finding. See State v. Gilmore , 537 S.W.3d 342, 344-45 (Mo. banc 2018) ; State v. Smith , 944 S.W.2d 901, 916 (Mo. banc 1997) ; State v. Bumbery , 492 S.W.3d 656, 661 (Mo.App. S.D. 2016).
Importantly, "[a] jury always can disbelieve all or any part of the evidence, just as it always may refuse to draw inferences from that evidence." Jackson , 433 S.W.3d at 392. Where the evidence adduced is sufficient to meet a party's burden of production, "the jury-and only the jury-will decide what the evidence does and does not prove beyond a reasonable doubt[ ]"; that is, whether a party meets its burden of persuasion. Id. at 402.
Our courts have held that the jury's right to credit evidence and inferences arising out of the State's case-in-chief, combined with the jury's right to reject some or all of a defendant's self-defense evidence (and its inferences), can provide sufficient evidence to warrant submission of the self-defense issue to the jury. See , e.g. , Letica , 356 S.W.3d at 167 ("[T]he jury was well within its province to reject [defendant]'s claim of self-defense.... [T]he jury could have disregarded defendant's testimony" and credited evidence from the State's case regarding victim's wounds, their severity, and victim's testimony.); Wiley , 337 S.W.3d at 46 n.8.
Jones' substantial-evidence argument is premised on the existence of evidence favorable to his self-defense claim[6] *916 -that Victim had a BB gun. Even the cases Jones cites in support of this argument belie the fallacy of this approach. State v. Zeitvogel , 655 S.W.2d 678 (Mo. App. W.D. 1983), cited in Jones' brief, provides the most direct repudiation. Zeitvogel recites that "only when the evidence ... [of] the necessary elements of self-defense is clear and undisputed should our courts order acquittal." Id. at 693. Jones directs us to this "clear and undisputed" language, but fails to appreciate (or account for) Zeitvogel 's discussion of what it means-specifically: "Appellant suggests that the state was required to meet and refute each element of his claim of self-defense. This is not required ." Id. (emphasis added). This is because a self-defense claim depends on the proof and negation of several elements, which must be injected by the evidence before the State's burden as to that claim is invoked. See § 563.031.[7] Once invoked, the State's burden is met if there is evidence (either adduced in the State's case, or adduced by the State and defendant's cases, as relevant to the stage of the proceedings) that, if believed, warrants the jury's finding that any individual element necessary to the self-defense claim is absent. Where successful in this task, the State's burden of production to put at issue the claim of self-defense beyond a reasonable doubt is met.[8]
Jones' reliance on evidence supporting his own position is also unavailing for the reason that the jury would have no duty to credit it. See State v. Harris , 549 S.W.3d 513, 516 (Mo.App. S.D. 2018). It also warrants reasonable inferences that do not support his position, and for which he does not account-for instance, that Victim merely had the supplies for the BB gun in the car, or that Victim had his BB gun and supplies, but did not draw his BB gun on Jones. See Wiley , 337 S.W.3d at 46 n.8.
These analytical misapprehensions demonstrate why it is mandatory for an appellant challenging his criminal conviction to complete the following analytical sequence:
1. Identify a challenged factual proposition needed to sustain the conviction;
2. Identify all favorable evidence in the record tending to prove that proposition; and
3. Show why such evidence, when considered along with its reasonable inferences, is so non-probative that no reasonable fact-finder could believe the proposition.
*917 State v. Light , 407 S.W.3d 135, 137 n.4 (Mo.App. S.D. 2013).
Quite simply, there was sufficient evidence to warrant the jury's finding that Jones did not act in self-defense when he shot Victim.
There was significant testimony, physical evidence, and reasonable available inferences that Victim did not have a BB gun in the car, or alternatively, if he did, had not drawn and pointed it at Jones. The jury had the right to credit this evidence, and did so. This alone warranted submission of self-defense to the jury, for the reason that it puts at issue several (if not all) the elements of self-defense, pursuant to section 563.031.
Further, the jury may draw inferences as to a defendant's intentions and motives "from the defendant's conduct before the act, during the act[,] and after the act." State v. Montiel , 509 S.W.3d 805, 809 (Mo.App. S.D. 2016) (internal quotation and citation omitted). There was sufficient evidence from Jones' conduct during and after the shooting to warrant the inference that Jones did not shoot Victim due to his reasonable fear for the safety of himself or others. § 563.031. The credited testimony was that Jones, unprompted, ordered everyone but his girlfriend out of the car at gunpoint-that is, everyone who would have been entitled to money or a share of the drugs from Jones. Jones drove away without paying any money, and with the entire eight ball of methamphetamine. He did not thereafter try to pick up the companions he had ordered out, or check to confirm their safety (he had shot S.G. in the hand). Instead, he "punched the gas" toward the dead-end of the street, effected a U-turn by plowing over a neighbor's boulder-filled yard, made his girlfriend dump Victim's body (which was still hanging out the open-rear car door), and when she finished dragging Victim out, "they sped off."
When Jones and his girlfriend got back to the place they had been staying, they smoked the methamphetamine they had taken from Victim. Jones destroyed evidence of the shooting in the car. He never told his girlfriend that it was self-defense, or told her about a BB gun he later claimed Victim had pulled on him, or showed it to her. Jones fled numerous times from authorities. When caught, he told detectives they would find "something fake" that Victim pulled on him in the car (they did not). At trial, he changed his story and said it was a BB gun, and it was on the refrigerator at the place he and girlfriend had been staying (it was not). This is sufficient evidence to warrant the inference that Jones wanted the drugs and his money, and sought to procure that end by violently separating himself and his girlfriend from those who might object-J.M., S.G., and Victim. Thus, there was sufficient evidence to warrant the finding that when Jones shot Victim three times, he was not acting in self-defense.
The trial court did not err in rejecting Jones' motion for acquittal at the close of all the evidence as to his conviction of murder in the second degree. Point I is denied.
Jones' Point II is contingent upon our favorable disposition as to his Point I. As such, we need not address it. Point II is denied.
The judgment of the trial court is affirmed.
JEFFREY W. BATES, J.-Concurs
MARY W. SHEFFIELD, J.-Concurs

The form of the jury instruction is not challenged, and that issue is not before us in this appeal.

See Wiley , 337 S.W.3d at 46 n.8 ("Self-defense is an issue for the fact-finder when there is conflicting evidence or different inferences could be reasonably drawn from the evidence .") (emphasis added).

Curiously, Jones' brief overlooks these useful premises and cites Miller , 653 S.W.2d at 224, for the narrower proposition that "[w]here substantial evidence inconsistent with a claim of self-defense is presented during a trial, the issue of self-defense becomes a jury question." (Emphasis added). Regardless, subsequent case law aligns with the salient principle espoused in Miller . See State v. Clark , 486 S.W.3d 479, 492 (Mo. App. W.D. 2016) ; State v. Henderson , 311 S.W.3d 411, 413-15 (Mo.App. W.D. 2010).

It is a stretch for this Court to view these matters as preserved by Jones' first point relied on. It requests us to grant relief despite "the testimony that [Victim] did not possess a weapon, that [Jones] ordered everyone out of his motor vehicle, that [Jones] fled the scene of the shooting[,] and that no pistol belonging to [Victim] was found on top of [M.P.'s] refrigerator as testified to by [Jones.]" See Missouri Court Rule 84.04(e) (2018). The matters on which Jones' argument is based fail to make an appearance in his point relied on. Nevertheless, because of the seriousness of the matters at issue, and because the State will not be prejudiced by our disposition, we do not dismiss Jones' first point on this basis.

As more fully expressed elsewhere in this Opinion, this recitation is incomplete-to be successful, an appellant's challenge must also accommodate the alternative inferences of the evidence adduced at trial, even where such evidence is undisputed and uncontradicted.

For a time, Missouri courts followed the so-called "circumstantial evidence rule." In rarefied form, as it was sometimes interpreted, it espoused the following standard:
Where a chain of circumstances leads up to and establishes a state of fact inconsistent with any theory other than the guilt of the accused, such evidence is entitled to as much weight as any other kind of evidence; but the chain, as it were, must be unbroken, and the facts and circumstances disclosed and relied upon must be irreconcilable with the innocence of the accused in order to justify his conviction .
State v. Pritchett , 327 Mo. 1143, 39 S.W.2d 794, 797 (1931) (internal quotation and citation omitted) (emphasis added); see, e.g. , State v. Bunton , 453 S.W.2d 949, 952 (Mo. banc 1970). Our Supreme Court rejected the "circumstantial evidence rule" in State v. Grim , 854 S.W.2d 403, 408 (Mo. banc 1993). At least implicitly, the reasoning in Jones' argument tracks the bolded portion of the now-rejected rule. It is not clear whether this is the cause, or merely a coincident reflection, of Jones' errant reasoning.

All references to statutes are to RSMo 2000, unless otherwise indicated.

This is evinced by logic, as well as law. If defendant demonstrates-without contradiction by evidence or inference-he was not the initial aggressor, but the State proves that defendant did not reasonably fear imminent bodily harm or death, and that the force used was unnecessary, it would strain any reasonable expectation of justice to suggest that the defendant should be entitled to acquittal.