

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FIVE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110620 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Richard M. Stewart |
| CHRISTOPHER C. POOL, JR., | ) | |
| | ) | |
| Appellant. | ) | FILED: June 27, 2023 |

### Introduction

Christopher C. Pool, Jr. ("Pool") appeals from the trial court's judgment and sentence following a jury trial convicting him on first-degree assault, armed criminal action, and unlawful possession of a firearm. Pool raises three points on appeal in which he challenges: (1) the admission of evidence of a high-speed chase involving a vehicle that matched the description of the vehicle he allegedly drove from the shooting; (2) the trial court's refusal to give a self-defense instruction which omitted initial-aggressor language; and (3) the trial court's denial of his motions for a judgment of acquittal on all counts.

Because evidence of the high-speed chase was relevant to the issues of identification, mental state, and lack of self-defense, and because evidence of flight is probative of consciousness of guilt, we deny Point One. Because the record contains evidence that Pool was the initial aggressor, we deny Point Two. Because Pool offers no argument consistent with our

standard of review to dispel the evidence supporting a finding that he did not act in self-defense, we deny Point Three. Accordingly, we affirm the trial court's judgment.

Factual and Procedural History

The State charged Pool with first-degree assault ("Count I"), armed criminal action ("Count II"), and unlawful possession of a firearm ("Count III") for shooting Deante Long ("Long"). Viewed in the light most favorable to the verdict, the following evidence was adduced at trial:

On January 5, 2021, Long and Jihad Robb ("Robb") were at a bar with Brittany Fisher ("Fisher"). During a verbal argument with Long and Robb, Fisher said that she was going to get her "baby's daddy." Long and Robb knew Fisher was referring to Pool, a mutual acquaintance.

Shortly thereafter, Long and Robb left the bar and drove to Robb's house. At some point, Robb stepped outside his house and found Pool and Fisher, along with three or four other men. Pool and the other men were visibly armed. When Robb told them to leave, Pool asked Robb why Long had "put his hands" on Fisher. Robb denied that Long ever touched Fisher. Despite multiple requests from Robb, Pool and the others refused to leave.

Eventually, Long stepped outside and Pool accused him of hitting Fisher with a bottle, which Long denied. Long asked Pool, "Are you here to fight?" Pool responded by grabbing a black assault rifle from one of the other men and told Long that he would rather "take a body."[1] Feeling threatened, Long retrieved a shotgun from inside the house. Long racked the shotgun to persuade Pool and his friends to leave. Pool then fired two shots at Long, over Robb's head. Robb told Pool to stop shooting and tried to push Pool into his car. Long racked the shotgun again and tried to convince Pool to leave. Pool moved around Robb and approached Long

---

[1] It was adduced at trial that "take a body" means to kill someone. Long testified he believed Pool was threatening to kill him.

before firing three or four more shots at him. Long was struck once in the stomach and once in each forearm. Long dropped the shotgun and ran inside to call an ambulance. Long never fired the shotgun or pointed it at anyone.[2]

Pool fled the scene alone in a newer model, smoke-gray Jeep Cherokee with dark, tinted windows (the "Jeep"). When police arrived, Robb told them what happened and gave a description of the Jeep. About thirty minutes after the shooting, St. Louis County Police Officer Timothy Lally ("Officer Lally") saw a newer model, smoke-gray Jeep Cherokee with heavily tinted windows parked at a gas station. A black male was standing next to the vehicle, pumping gas. The gas station was within three-and-a-half miles of Robb's house.

Officer Lally confirmed that the description of the Jeep matched the vehicle he was observing. When the Jeep started to drive away, Officer Lally pulled in behind it and activated his lights and sirens. The Jeep accelerated at a high rate of speed with Officer Lally in pursuit. Officer Lally was driving a fully marked St. Louis County patrol vehicle. Officer Lally followed the Jeep on city streets at speeds over 100 miles per hour and then continued on the highway at speeds over 120 miles per hour. Officer Lally terminated his pursuit when he lost visual contact with the Jeep. At trial, Officer Lally testified that he could not positively identify Pool as the driver, nor could he confirm that the vehicle he chased was the Jeep in which Pool fled after the shooting. The dash-cam video from Officer Lally's patrol car was admitted as the State's Exhibit 21 ("Exhibit 21").[3] Pool turned himself in after evading arrest for six days.

Before trial, Pool made an oral motion in limine to exclude evidence of the high-speed chase involving Officer Lally. Pool argued that because he was not unequivocally identified as

---

[2] A police officer testified that several unspent shotgun shells were recovered from in front of the house, which is consistent with "racking" the shotgun without firing it.
[3] Appellant refers to the dash-cam video as "Exhibit 22" in his point relied on. The record indicates that Exhibit 22 was the audio transcript from the video.

3

the driver and the vehicle was not explicitly identified as the same vehicle present at the shooting, the evidence would be highly prejudicial. The trial court overruled the motion, reasoning that the evidence of the chase was admissible for the jury's consideration due to the time of day, proximity to the scene, and the fact that Pool left the scene alone in a similar vehicle.

Long, Robb, and Fisher testified regarding the events leading up to the shooting. Long and Robb recounted substantially the same facts. Fisher, however, testified that Long had physically assaulted her at the bar earlier that night. Fisher further testified that Long pointed the shotgun at Pool before Pool took a rifle from another man and shot Long. Pool did not testify in his own defense. Pool's theory of defense was that he shot Long in self-defense. However, in his closing argument, Pool also challenged his identification as the shooter.

Pool moved for a judgment of acquittal at the close of the State's evidence and again at the close of all evidence. The trial court denied both motions. Pool then objected to the State's self-defense instruction because the instruction contained initial-aggressor language ("Instruction No. 11"). The instruction included language that "an initial aggressor is not justified in using physical force to defend himself from the counter attack he provoked." Pool proffered a similar self-defense instruction which omitted the initial-aggressor language. The trial court rejected Pool's self-defense instruction because it found the State had adduced sufficient evidence warranting the inclusion of the initial-aggressor language in the self-defense instruction. Instruction No. 11 read in relevant part as follows:

> One of the issues as to Counts I and II is whether the use of force by the defendant against Deante Long was lawful. On the issue of self-defense as to Counts I and II in this case, you are instructed as follows:

> In this state, the use of force, including the use of deadly force, to defend oneself is lawful in certain situations.

4

***However, an initial aggressor is not justified in using physical force to defend against the counter attack he provoked.***

In order for a person lawfully to use non-deadly force in self-defense, he must reasonably believe such force is necessary to defend himself from what he reasonably believes to be the imminent use of unlawful force and can only use physical forces to the extent that he reasonably believes is necessary to defend himself.

. . . .

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. Unless you find beyond a reasonable doubt that the defendant did not act in lawful self-defense, you must find the defendant not guilty under Counts I and II.

***As used in this instruction, an "initial aggressor" is one who first attacks or threatens to attack another.***

. . . .

You, however, should consider all of the evidence in the case in determining whether the defendant acted in lawful self-defense.

(Emphasis added).

The jury found Pool guilty as charged. The trial court sentenced Pool as a persistent offender to twenty years in prison on Count I, five years on Count II, and seven years on Count III. The twenty-year and five-year sentences were ordered to run consecutively, and the seven-year sentence was ordered to run concurrently.

In his motion for a new trial, Pool advanced the following grounds: (1) the trial court's admission of the high-speed chase evidence; (2) the trial court's rejection of his proffered self-defense instruction; (3) the trial court's denial of his motions for judgment of acquittal for the State's failure to make a submissible case as to each element in each charge; and (4) that the jury's verdict was against the weight of the evidence. Pool now appeals.

Pool raises three points on appeal. In his first point, Pool argues the trial court abused its discretion in admitting the testimony of Officer Lally and Exhibit 21 in that evidence of the high-speed chase was not relevant and thereby prejudiced Pool. In his second point, Pool charges the trial court with error in refusing his proffered self-defense instruction omitting initial-aggressor language, because there was no evidence that Pool was the initial aggressor. In his third point, Pool contends the trial court erred in denying his motions for judgment of acquittal because the State failed to establish beyond a reasonable doubt that Pool did not act in lawful self-defense or that his use of a firearm was not an emergency measure.

## Discussion

**I.      Point One—Admission of High-Speed Chase Evidence**

### A.      Standard of Review

We review a trial court's admission or exclusion of evidence for an abuse of discretion. State v. Loper, 609 S.W.3d 725, 731 (Mo. banc 2020). A trial court is vested with broad discretion in admitting or excluding evidence and abuses its discretion only if its decision "is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." Id. (quoting State v. Blurton, 484 S.W.3d 758, 769 (Mo. banc 2016)). We will reverse the trial court's judgment "only if there is a reasonable probability that the error affected the outcome of the trial or deprived the defendant of a fair trial." Id. (quoting State v. Wood, 580 S.W.3d 566, 574 (Mo. banc 2019)). "If reasonable minds could differ on the propriety of the ruling, no abuse of discretion has occurred." State v. Tillitt, 552 S.W.3d 571, 580 (Mo. App. W.D. 2018) (quoting State v. Benedict, 319 S.W.3d 483, 487 (Mo. App. S.D. 2010)).

B.  Discussion

"Evidence must be both logically and legally relevant to be admissible." In re J.R., 633 S.W.3d 899, 905 (Mo. App. E.D. 2021) (citing State v. Barriner, 111 S.W.3d 396, 400 (Mo. banc 2003)). "Evidence is logically relevant if it tends to make the existence of any fact of consequence more or less probable than it would be without the evidence or if it tends to corroborate other relevant evidence bearing on a principal issue of the case." Id. (citing Barriner, 111 S.W.3d at 400–01). "Logical relevance is a very low threshold." Id. (quoting Kappel v. Prater, 599 S.W.3d 189, 193 (Mo. banc 2020)) (internal quotation marks omitted). "Evidence is legally relevant if its probative value outweighs its costs, namely, 'prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or cumulativeness.'" Id. at 906 (quoting Barriner, 111 S.W.3d at 400).

"Evidence of flight is admissible to show consciousness of guilt." State v. Hosier, 454 S.W.3d 883, 895 (Mo. banc 2015) (internal citation omitted). "Remoteness of flight in space and time from the scene and time of the alleged crime goes only to the weight of the evidence and not to its admissibility." State v. Culpepper, 505 S.W.3d 819, 831 (Mo. App. S.D. 2016) (internal quotation omitted).

Here, Officer Lally observed a smoke-gray, Jeep Cherokee with tinted windows at a gas station approximately thirty minutes after the shooting and within three-and-a-half miles from the scene of the shooting. A black male was pumping gas into the Jeep. The time was between midnight and 1 a.m. and very few cars were on the roads. Officer Lally determined that the Jeep matched the description of the vehicle that fled the scene of the shooting. When Officer Lally activated his lights and sirens, the driver of the Jeep immediately raced away reaching speeds over 100 miles per hour before entering the highway and eventually evading Officer Lally.

7

Officer Lally testified that he could not positively identify Pool as the driver, nor could he confirm that the vehicle he chased was the same vehicle present at the shooting. However, Officer Lally believed Pool was driving the Jeep due to the close proximity in time and location to the shooting, the unique description of the vehicle, and the absence of other vehicles on the road.

We agree that evidence regarding the high-speed chase was logically and legally relevant to multiple contested issues in the case, including the identification of Pool as the shooter, Pool's mens rea relating to the charge of first-degree assault, and the lack of justifiable self-defense. See State v. Jones, 553 S.W.3d 909, 917 (Mo. App. S.D. 2018) (finding that a defendant's flight from the scene of a drug transaction after shooting the victim suggested he did not act in self-defense); State v. Clark, 486 S.W.3d 479, 491–92 (Mo. App. W.D. 2016) (finding a defendant's flight from the scene of a shooting instead of rendering assistance, calling for an ambulance, or waiting for police to tell his version of the events suggested he did not act in self-defense). Flight via a high-speed chase is highly probative as to the quality and depth of Pool's consciousness of guilt. See Culpepper, 505 S.W.3d at 831. Pool's defense of justification was premised on the claim that he shot Long in lawful self-defense. However, the chase reached speeds over 100 miles per hour on city streets and 120 miles per hour on a highway. The character of this chase is highly probative of Pool's guilt, especially where Pool's identity as the shooter, his intent to cause serious physical injury, and whether he shot Long in lawful self-defense were at issue. See id. The jury was free to consider whether Pool's alleged excessive speeding away from the police was probative of whether Pool was conscious of the fact that his shooting of Long was not lawful. See Jones, 553 S.W.3d at 917.

8

Pool maintains that the evidence of the chase is inconclusive and thus prejudicial because Officer Lally did not positively identify Pool as the driver. While the evidence pertaining to the chase may not be conclusive on each issue raised, Missouri courts have held that evidence need not be conclusive to meet the low threshold for logical relevance. See State v. Kennedy, 107 S.W.3d 306, 311 (Mo. App. W.D. 2003).

We find the probative value of the evidence relating to the high-speed chase outweighed any prejudice such evidence presented. Pool contends that the chase evidence confused the issues such that "the jury would believe that his alleged flight from law enforcement was part of the charges against him." However, the jury was instructed on the elements of each charged offense and we presume that the jury follows the court's instructions. See State v. McFadden, 391 S.W.3d 408, 424 (Mo. banc 2013). Pool further argues that evidence of the chase was "unnecessary." Such argument "misstates the test for admissibility . . . [because] [n]eed is not the test." State v. McWilliams, 564 S.W.3d 618, 632 (Mo. App. W.D. 2018). As stated above, the test for admissibility is whether the proffered evidence is both logically and legally relevant. In re J.R., 633 S.W.3d at 905. Further, admission of the high-speed chase evidence did not require the jury to find that Pool was in fact the driver. Rather, a dispute as to the identity of the driver goes to the weight of the evidence—not its admissibility—and is properly submitted for the jury's determination. See Culpepper, 505 S.W.3d at 831.

Therefore, we hold that the trial court did not abuse its discretion when admitting evidence of the high-speed chase. See In re J.R., 633 S.W.3d at 905; Culpepper, 505 S.W.3d at 831. Point One is denied.

## II. Point Two—Self-Defense Instruction

### A. Standard of Review

9

"In general, a defendant is entitled to a jury instruction when substantial evidence and the reasonable inferences drawn therefrom support the theory propounded in the requested instruction." State v. Hurst, 663 S.W.3d 470, 474 (Mo. banc 2023) (internal quotation omitted). "In making this determination, a court must view the evidence in a light most favorable to the defendant[.]" Id. (quoting State v. Barnett, 577 S.W.3d 124, 126 (Mo. banc 2019)). The "trial court's rejection of a proffered instruction should be affirmed if the trial court was correct . . . for any reason." State v. Sanders, 522 S.W.3d 212, 215 (Mo. banc 2017) (alteration in original) (internal quotation omitted).

B.      Discussion

At trial, Pool proffered a self-defense instruction for Counts I and II that omitted initial-aggressor language. The trial court rejected Pool's instruction in favor of giving Instruction No. 11, which included language that "an initial aggressor is not justified in using physical force to defend himself from the counter attack he provoked." Pool argues the record lacks evidence that he was the initial aggressor and, therefore, the trial court erred in refusing his proffered self-defense instruction. Although Pool's point on appeal directly challenges the trial court's refusal to give his proffered instruction, Pool indirectly challenges the trial court's giving Instruction No. 11, which he argues prejudiced him by precluding the jury from finding that he justifiably shot Long in self-defense if it determined Pool was the initial aggressor.

The focus of this point on appeal is whether the record contained sufficient evidence from which a jury reasonably could find that Pool was the initial aggressor in the altercation with Long. Evidence of aggression need not be irrefutable to support the submission of the initial-aggressor language in a self-defense instruction. Missouri courts have held that "[t]he [S]tate need not present undisputed evidence that [the] defendant was an initial aggressor in order to

10

submit the issue to the jury. Conflicting evidence as to who was the initial aggressor presents an issue of fact for the jury to decide." State v. Burns, 292 S.W.3d 501, 505 (Mo. App. S.D. 2009) (internal quotation omitted). The Missouri Approved Instructions–Criminal ("MAI–CR") Notes on Use provide that the initial-aggressor language should be used unless there is *"no evidence"* that the defendant was the initial aggressor. See MAI–CR 4th 406.06 Notes on Use (emphasis added). An initial aggressor is one who attacks or threatens to attack, or one who provokes the incident. See Section 563.031.1(1).[4] Pool contends he was prejudiced because "[s]elf[-]defense is not available . . . if the defendant was the initial aggressor, unless he withdrew from the conflict[.]" State v. Barriere, 556 S.W.3d 128, 134 (Mo. App. W.D. 2018) (internal quotation omitted).

Here, Pool suggests the record contains *no evidence* that he was the initial aggressor. Instead, Pool posits the evidence proves Long was the initial aggressor because Long asked Pool "if he wanted to fight" and later retrieved a shotgun, which he racked in a sign of aggression. Undermining Pool's claim that there is no evidence indicating that Pool was the initial aggressor in his altercation with Long, the State elicited testimony that Pool arrived at Robb's home with three armed men and threatened to kill Long before shooting at him in two separate instances. See Burns, 292 S.W.3d at 505 (finding evidence that the defendant uttered a threat to kill the victim supported the inclusion of the initial-aggressor language in a jury instruction). Evidence was adduced that Long retreated into the house to retrieve a shotgun *only after* Pool displayed a firearm and threatened to kill Long. Importantly, the record lacks evidence that Long fired any shots, whereas Pool shot at Long in two separate instances during the incident. We are

---

[4] All Section references are to RSMo (2016), unless otherwise indicated.

11

persuaded from these facts that a jury reasonably could find that Pool was the initial aggressor. See Section 563.031.1(1).

At most, Pool identifies ***conflicting evidence*** as to whether Pool or Long was the initial aggressor in this case. Conflicting evidence as to who was the initial aggressor presented an issue of fact for the jury to decide and was properly included in the self-defense jury instruction. See Burns, 292 S.W.3d at 506 (citing State v. Coleman, 263 S.W.3d 680, 683 (Mo. App. S.D. 2008)) ("Credibility of witnesses and the effects of conflicts or inconsistencies in testimony are questions for the jury to decide."). Therefore, the trial court did not err in rejecting Pool's requested instruction that omitted initial-aggressor language. See id. at 505; Sanders, 522 S.W.3d at 215. Point Two is denied.

## III.    Point Three—Motions for Acquittal

In his final point, Pool contends the trial court erred in denying his motions for judgment of acquittal on all counts because the State did not establish beyond a reasonable doubt under Counts I and II that Pool did not act in lawful self-defense. Pool further reasons that because he shot Long in self-defense, his use of a firearm was a lawful emergency measure that served as a defense of necessity to the charge of unlawful possession of a firearm in Count III. As Pool notes, each of his claims in this point challenge the sufficiency of the State's evidence that he did not act in self-defense.

### A.    Standard of Review

"To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but rather accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[s] all contrary evidences and inferences." State v. Gilmore, 537 S.W.3d 342, 344 (Mo. banc 2018) (quoting State v. Ess, 453 S.W.3d 196, 206 (Mo. banc

12

2015)). "In reviewing the sufficiency of the evidence, our review 'is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of guilt beyond a reasonable doubt.'" State v. Shigemura, 552 S.W.3d 734, 740 (Mo. App. E.D. 2018) (quoting State v. Bateman, 318 S.W.3d 681, 686–87 (Mo. banc 2010)). "The relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (alteration in original) (quoting Bateman, 318 S.W.3d at 687). "[W]e 'may not supply missing evidence, or give the [S]tate the benefit of unreasonable, speculative, or forced inferences.'" Id. (quoting State v. Clark, 490 S.W.3d 704, 707 (Mo. banc 2016)). We do not act as a super juror with veto powers, but give great deference to the trier of fact. Id. (internal quotations omitted). The fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case. Id. (internal quotations omitted).

"Once a defendant has injected the issue of self-defense into the case, the burden shifts to the State to prove beyond a reasonable doubt the absence of self-defense." State v. Jackson, 628 S.W.3d 761, 763 (Mo. App. S.D. 2021) (internal citation omitted). "A person is entitled to acquittal as a matter of law on the basis of self-defense only if there is undisputed and uncontradicted evidence clearly establishing self-defense." Id. (internal quotation omitted).

B.     Discussion

"[A]n appellant's most fundamental task in a sufficiency-of-the-evidence challenge [is] to account for all of the favorable evidence in the record, and all the reasonable available inferences therefrom, that could support its challenged factual proposition, and then confront and dispel the probative value attending the same supportive evidence and inferences." State v. Hooper, 552 S.W.3d 123, 137 (Mo. App. S.D. 2018) (internal citation omitted); see also Jones, 553 S.W.3d at

13

915–16 (finding a defendant's reliance on evidence supporting his own position was unavailing in challenging the sufficiency of the State's evidence that he did not act in self-defense).

The weakness in Pool's argument is that he does not account for the favorable evidence in the record supporting his challenged proposition, that Pool did not act in self-defense. Instead, Pool offers in this point only that evidence favorable to *his claim* that he shot Long in self-defense. Critically, Pool neglects to address and dispel the State's evidence that Pool did not act in self-defense. See Hooper, 552 S.W.3d at 137; Jones, 553 S.W.3d at 915–16. Pool's exclusive reliance on select evidence supporting his claim of self-defense "has no persuasive force because it provides no logical support for [his] insufficient-evidence claim." State v. Massa, 410 S.W.3d 645, 660 (Mo. App. S.D. 2013). "Our standard of review requires us to disregard all evidence contrary to the verdict, . . . which makes such evidence fall outside of the analytical framework of a cogent insufficiency-of-the-evidence argument." Id.

As the State notes in its brief, Pool completely ignores the evidence in the record upon which the jury reasonably could have relied to find Pool did not act in self-defense. In his reply brief, Pool suggests that he addressed the facts supporting the verdict in the facts section of his brief. However, Pool does not present or suggest any inferences that reasonably could be drawn from said facts that he did not act in self-defense. Even if we were to conclude that the facts section of his brief identified facts aligned with a showing that Pool did not act in self-defense, Pool neither addresses such facts in the argument section of his brief nor discusses any reasonable inferences to be drawn from those facts. Pool simply offers no argument to dispel the probative value of such facts. See Hooper, 552 S.W.3d at 137.

Once a defendant invokes self-defense "the State's burden is met if there is evidence . . . that, if believed, warrants the jury's finding that any individual element necessary to the self-

defense claim is absent." Jones, 553 S.W.3d at 916. As mentioned in our discussion of Point Two above, Pool is not entitled to a claim of self-defense if he was the initial aggressor. See Barriere, 556 S.W.3d at 134. A defendant cannot successfully claim self-defense when using physical force to defend against an attack he provoked. See id.; see also Section 563.031.1(1).

Here, evidence was adduced at trial that Pool did not act in self-defense in his conflict with Long because Pool was the initial aggressor. Long and Robb both testified that Pool threatened Long *before* Long went inside to retrieve the shotgun. Pool hinges his claim of self-defense on feeling threatened when Long racked the shotgun. We are persuaded that a jury reasonably could infer that Pool's initial act of aggression—showing up unannounced with other armed men and then threatening to kill Long—incited Long's retrieval of the shotgun and therefore nullified Pool's self-defense claim. See Shigemura, 552 S.W.3d at 740.

As we held in Point Two, the record contains sufficient evidence in the record from which a jury could conclude that Pool was the initial aggressor, thereby defeating any claim of self-defense. See Barriere, 556 S.W.3d at 134 (citing Section 563.031.1(1)). Our rejection of Pool's self-defense claim is dispositive of his argument that his use of a firearm was justified as an "emergency measure" under Count III. We note that Pool does not develop this argument in his brief. Specifically, his argument encompasses one line at the end of his brief and simply states he was "justified in possessing a weapon as an emergency measure to avoid injury." This single conclusory statement does not adequately address the defense of justification by necessity. Section 563.026 requires that the imminent injury at issue was "about to occur by reason of a situation occasioned or developed *through no fault of the actor*." State v. Zuidema, 552 S.W.3d 186, 190 (Mo. App. W.D. 2018) (emphasis added). Therefore, the facts which support a finding

15

that Pool was the initial aggressor are similarly dispositive of this claim. See id.; Shigemura, 552 S.W.3d at 740.

Pool offers no argument consistent with our standard of review that the record lacks evidence from which a jury could find that Pool did not act in self-defense. See Gilmore, 537 S.W.3d at 344; Hooper, 552 S.W.3d 137. Therefore, because the State made a submissible case that Pool did not act in self-defense, the trial court did not err in denying his motions for acquittal. See Gilmore, 537 S.W.3d at 344. Point Three is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Judge

Michael E. Gardner, C.J., concurs.
Renée Hardin-Tammons, J., concurs.