**STATE of Missouri, Respondent,**

v.

**Michael MOORE, Appellant.**

**No. SC 90125.**

Supreme Court of Missouri, En Banc.

Jan. 26, 2010.

judgment interest should accrue.

Nancy A. McKerrow, Office of the Public Defender, for appellant.

Chris Koster, Attorney General, Dora A. Fichter, Assistant Attorney General, for respondent.

PATRICIA BRECKENRIDGE, Judge.

Following the revocation of Michael Moore's probation in two separate criminal cases, the sentencing judge ordered execution of Mr. Moore's previously imposed sentences for felony driving while intoxicated. Mr. Moore was ordered to be held in the Warren County jail until he could be transported to the department of corrections. After being booked into jail, Mr. Moore was furloughed temporarily by the sentencing judge with orders to return to confinement on a specified date. Mr. Moore did not return to jail when ordered,

and he was charged with and convicted by a jury of the class D felony of failure to return to confinement, pursuant to section 575.220.[1] He appeals his conviction.

On appeal, Mr. Moore claims that there was insufficient evidence to convict him of felony failure to return to confinement because he was not serving a sentence when he was released temporarily from the county jail and that the sentencing judge did not have authority to grant a furlough. Mr. Moore also claims that the trial court erred by allowing the sentencing judge to testify as to his opinion that Mr. Moore was serving a sentence to the department of corrections when he was furloughed. Because Mr. Moore was serving a sentence to the department of corrections when he was booked into the county jail and subsequently released and the trial judge's lack of authority to grant a furlough is legally irrelevant, his first point is denied. Additionally, because the sentencing judge's testimony that Mr. Moore was serving a sentence to the department of corrections when he was furloughed did not prejudice Mr. Moore, his second point is denied, and the judgment is affirmed.

## Factual and Procedural Background

On December 7, 2006, Michael Moore appeared before the Warren County Circuit Court for a hearing to revoke his probation for two earlier convictions of driving while intoxicated (DWI). Mr. Moore had been sentenced to four-year and seven-year terms of imprisonment for the two DWI offenses, but execution of those sentences was suspended and he was placed on probation. Mr. Moore violated the terms of his probation. At a December 7, 2006, revocation hearing, the court revoked Mr. Moore's probation, ordered execution of his previously imposed sentences to the department of corrections, and ordered that Mr. Moore be held in the

Warren County jail until he could be transported to the department.

Mr. Moore requested a stay of his sentence so he could spend Christmas with his family. The sentencing judge denied Mr. Moore's request for a stay and, instead, granted him what the judge termed a "furlough." To accomplish this furlough, after being sentenced, Mr. Moore was taken into custody and transported to the Warren County jail. There, Mr. Moore was booked into custody on December 7, 2006, and then released the same day with orders to return to confinement by noon 20 days later. The sentencing judge intentionally granted a furlough instead of a stay because it meant Mr. Moore would be "in custody" and could be prosecuted for failing to return to confinement in the event he did not report back on time. The judge warned Mr. Moore that if he did not return to the jail at the designated time, he could be charged with the crime of failing to return to confinement. Despite this warning, Mr. Moore returned to the jail six days late. The day following his return, Mr. Moore was delivered to the department of corrections.

Mr. Moore subsequently was charged with the class D felony of failure to return to confinement, in violation of section 575.220. At trial, the state called as a witness the sentencing judge who granted the furlough. Over a defense objection, the judge was permitted to testify that it was his opinion that Mr. Moore started serving his sentence to the department of corrections when he was booked into the county jail December 7, 2006. The sentencing judge stated that he based his opinion on the fact that Mr. Moore would receive credit toward the service of his sentence for all time spent at the jail during his booking. The judge further testified that he believed Mr. Moore was in

<hr>

1. Unless otherwise noted, all statutory references are to RSMo 2000.

custody at the time of his booking and that the sheriff simply was holding him on behalf of the department of corrections.

Mr. Moore called Stewart Epps, a warden at the Fulton reception and diagnostic center, as a defense witness. Warden Epps testified that an inmate begins serving a sentence in the department of corrections when he physically is received and accepted by the department. On cross-examination, Warden Epps stated that an inmate receives credit toward the service of the inmate's sentence for all time spent in a county jail before the department physically received the inmate. By way of illustration, Warden Epps testified that if an inmate was held in a county jail beginning December 1 and was received by the department of corrections January 1, the department's records would reflect December 1 as the start date of the inmate's sentence. Warden Epps further testified that, in this case, the department of correction's records showed that the starting date of Mr. Moore's sentence was sometime in March 2006, even though the department did not receive Mr. Moore until January 2007.

At the close of the evidence, Mr. Moore moved for a judgment of acquittal, which the trial court denied. Verdict directors for both felony and misdemeanor failure to return to confinement were submitted to the jury. The jury returned a verdict finding Mr. Moore guilty of felony failure to return to confinement. The trial court sentenced him to a term of four years imprisonment, concurrent with the terms he already was serving. Mr. Moore appealed his conviction. After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V. sec. 10.

## Standard of Review

■ When reviewing the sufficiency of evidence supporting a criminal conviction, the Court gives great deference to the trier of fact. *State v. Oliver*, 293 S.W.3d 437, 444 (Mo. banc 2009). Appellate review "is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Id.* (quoting *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998)). In applying this standard, "the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary." *Id.*

## Sufficient Evidence of Failure to Return to Confinement

For his first point on appeal, Mr. Moore argues there was insufficient evidence to find him guilty of felony failure to return to confinement because he was not serving a sentence to the department of corrections when he was booked into jail and furloughed by the sentencing judge, which is an element of the felony offense under section 575.220.

■ "A person commits the crime of failure to return to confinement if ... while serving any ... type of sentence for any crime wherein he or she is temporarily permitted to go at large without guard, he or she purposely fails to return to confinement when he or she is required to do so." Section 575.220.1. "Failure to return to confinement is a class C misdemeanor unless ... [t]he sentence being served is to the Missouri department of corrections and human resources, in which case failure to return to confinement is a class D felony...." Section 575.220.3(1). Thus, in order to be guilty of felony failure to return to confinement, the defendant must: (1) be serving a sentence to the department of corrections for some crime; (2) be temporarily permitted to go at large without

guard; and (3) purposely fail to return to confinement when required to do so.

Mr. Moore claims the state failed to prove the first element of felony failure to return to confinement. He argues that under section 558.031 a sentence to the department of corrections does not commence until a person physically is received by the department and, therefore, he was not serving a sentence when he was booked into the county jail because physically he had not been received into custody by the department. The issue, therefore, is what is required under section 575.220.3 before a person is deemed to be "serving a sentence."

▮ When interpreting a statute, the primary goal is to give effect to legislative intent as reflected in the plain language of the statute. *State v. Salazar*, 236 S.W.3d 644, 646 (Mo. banc 2007). When interpreting a statute, this Court must give meaning to every word or phrase of the legislative enactment. *Winfrey v. State*, 242 S.W.3d 723, 725 (Mo. banc 2008).

▮ Here, the legislature did not define what it means to "serve a sentence" for purposes of section 575.220.[2] Therefore, this Court will look to the plain and ordinary meaning of those words as defined in the dictionary. *Oliver*, 293 S.W.3d at 446 ("In the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary."). The word "serve" means "to put in (a term of imprisonment)." Webster's Third New International Dictionary 2075 (3rd ed.1993). A "sentence" is "the order by which a court or judge imposes punishment or penalty on a person found guilty." *Id.* at 2068. Accordingly, the plain and ordinary meaning of the phrase "serving a sentence" is to put in a term of imprison-

ment pursuant to a court order imposing punishment upon a person found guilty of a crime. Nothing in this definition requires people to be incarcerated physically in a particular place before they can begin serving their sentence, as urged by Mr. Moore.

Another word the legislature uses to define when a person can be convicted of felony failure to return to confinement must also be given consideration. The language of section 575.220 makes failing to return to confinement a class D felony if "[t]he sentence being served is *to* the Missouri department of corrections." Section 575.220.3(1) (emphasis added). Because this Court must give meaning to every word or phrase of the legislative enactment, this Court assumes that the legislature purposefully used the word "to" and that its use has meaning in the statute. *Winfrey*, 242 S.W.3d at 725.

▮ Mr. Moore attempts to interpret section 575.220.3(1) as though it reads "the sentence being served is *in* the department of corrections." If the legislature had intended a person to be in the physical custody of the department of corrections before the person could be charged under section 575.220, it easily could have used the word "in" rather than "to." The legislature clearly knew how to make such a distinction, as shown by the fact that the following subsection of the statute makes failing to return to confinement a class A misdemeanor when "[t]he sentence being served is one of confinement *in* a county jail." Section 575.220.3(2) (emphasis added). The legislature's use of different terms in different subsections of the same statute is presumed to be intentional and for a particular purpose. *Armco Steel v. City of Kansas City, Mo.*, 883 S.W.2d 3, 7

---

**2.** The definitions applicable to the entire criminal code are contained in section 556.063, while the specific definitions pertaining to chapter 575 can be found in section 575.010. Neither of these sections contains a definition for the phrase "serving a sentence."

(Mo. banc 1994). In the present case, the legislature's decision to use the word "to" in section 575.220.3(1), rather than "in," reflects its intent that inmates sentenced to the department of corrections that are being held in a county jail while awaiting transfer to the department of corrections are still capable of being prosecuted for failing to return to confinement.

As noted above, Mr. Moore disagrees with this interpretation of section 575.220.3(1) and argues that the legislature did not intend the crime of felony failure to return to confinement to encompass the circumstance where he was booked into the county jail and furloughed and physically had not been received into custody by the department of corrections. Mr. Moore relies on section 558.031.1 to support his argument that a person does not begin serving a sentence for purposes of 557.220.3(1) until they physically are received by the department of corrections. Section 558.031.1 states, in relevant part:

> A sentence of imprisonment shall commence when a person convicted of a crime in this state is received into the custody of the department of corrections.... Such person shall receive credit toward the service of a sentence of imprisonment for all time in prison, jail or custody after the offense occurred and before the commencement of the sentence....

■■■ Mr. Moore's argument that a criminal defendant can only be guilty of felony failure to return to confinement after the defendant physically is received by the department of corrections would require this Court to read section 558.031 into section 575.220. While statutes in different chapters of the criminal code can be considered in determining the intent of the legislature, the provisions in another section should not be utilized to alter the legislature's intent as apparent from the plain and ordinary language of a

criminal statute. Section 558.031 is intended to regulate the calculation of prison time for purposes of determining prison credit, not to define when a defendant begins serving a sentence for purposes of section 575.220. If the legislature had intended the technical definition of "commencement of a sentence" in section 558.031.1 to apply to section 575.220.3(1), it could have incorporated the definition from 558.031.1 into sections 557.220, 556.063 or 575.010. It did not. To adopt Mr. Moore's construction would create an ambiguity in an otherwise unambiguous statute. There is no need to resort to statutory construction to create an ambiguity where none exists. *State v. Burns,* 978 S.W.2d 759, 761 (Mo. banc 1998) ("Where the language of the statute is clear, courts must give effect to the language used by the legislature.").

Under the interpretation urged by Mr. Moore, a person sentenced to the department of corrections would not be serving a sentence despite the fact that a judge had ordered the person's sentence be executed and the person was taken into custody and incarcerated by virtue of such sentence. Such a reading contravenes the plain language of the statute. A plain reading of section 575.220 shows that when a person's sentence "to" the department of corrections is ordered to be executed and the person is taken into custody, then that person has commenced serving his or her sentence. This is true despite the fact that the person is not physically in the department of corrections. The plain language of section 575.220 recognizes the practical reality that all prisoners sentenced to the department of corrections are held in temporary custody by local law enforcement before they are transported to the department of corrections and the person is in the custody of local law enforcement by virtue of fact that they are

serving a sentence to the department of corrections.

■ In this case, the sentencing court ordered Mr. Moore's previously imposed sentence to the department of corrections to be executed. Pursuant to that order, Mr. Moore was taken into custody, transported to a county jail and booked into custody. The plain language of section 575.220 encompasses that circumstance. Hence, there was sufficient evidence to find that Mr. Moore was serving a sentence to the department of corrections when he was booked into the Warren County jail.

■ In connection with his first point, Mr. Moore also argues that the sentencing judge lacked authority to grant him a furlough because, under section 217.425, only the director of the department of corrections is authorized to grant furloughs. It is true that section 217.425 does not extend authority to grant furloughs to circuit judges. However, the fact that Mr. Moore's release was not authorized by that statute is irrelevant for purposes of section 575.220. Section 575.220 only requires that a defendant be "temporarily permitted to go at large without guard." It does not require that the release be in conformity with a specific provision of law. Here, Mr. Moore was permitted to go temporarily at large without guard when the judge granted him what he termed a "furlough." Regardless of how the release was labeled, Mr. Moore was permitted to go temporarily at large without guard, which is all that is required by section 575.220.

■ Additionally, Mr. Moore is estopped from challenging the validity of the sentencing judge's order granting him a furlough because he accepted the benefits of that order by going temporarily at large without guard. A person who accepts the benefits of a judicial order is estopped from denying its validity or propriety. *See State ex rel. York v. Daugherty*, 969

S.W.2d 223, 225 (Mo. banc 1998) (applying estoppel in a civil case); 31 C.J.S. *Estoppel and Waiver* § 172 (2008) (citing *Rhodes v. State*, 240 S.W.3d 882, 891 (Tex.Crim.App. 2007) (applying estoppel in a criminal case)). Because Mr. Moore failed to attack the validity of the judge's order granting him a furlough and then accepted the benefits of that order, he is estopped from attacking it now.

Because Mr. Moore was serving a sentence to the department of corrections when he temporarily was permitted to go at large by the sentencing judge's order, there was sufficient evidence on which a reasonable juror could have found him guilty beyond a reasonable doubt of failure to return to confinement. As such, Mr. Moore's first point is denied.

### Sentencing Judge's Opinion Testimony Not Prejudicial

In his second point, Mr. Moore claims that the trial court erred by allowing the sentencing judge to testify that it was his opinion that Mr. Moore was serving a sentence to the department of corrections at the time he was furloughed. He asserts that the sentencing judge should not have been permitted to give expert opinion testimony because there was no foundation that the sentencing judge was an expert, his opinion was irrelevant, it invaded the province of the jury, and the sentencing judge stated a legal conclusion.

■ The majority of Mr. Moore's claims of error are not preserved because he did not object to the sentencing judge's testimony on all of the grounds he now raises. His objection at trial was that the sentencing judge had not been qualified as an expert. Mr. Moore did not preserve his claim of error that the judge's opinion was irrelevant, invaded the province of the jury and stated a legal conclusion because he did not object on that basis at trial. *State*

*v. Knese*, 985 S.W.2d 759, 766 (Mo. banc 1999) ("To preserve an objection to evidence for review, the objection must be specific, and the point raised on appeal must be based upon the same theory."). Additionally, he failed to preserve any claim of error related to the sentencing judge's testimony because he did not raise such claims in his brief filed in the court of appeals. Rules 30.27; 83.08(b). As a result, Mr. Moore's claims can be reviewed only for plain error under Rule 30.20, which he requests.

▮ The issue of whether Mr. Moore was serving a sentence to the department of corrections at the time he was furloughed concerns the interpretation of section 575.220, which is an issue of law, not fact. *Holtcamp v. State*, 259 S.W.3d 537, 539 (Mo. banc 2008). Expert testimony is not admissible on issues of law, *State v. Kinder*, 942 S.W.2d 313, 334 (Mo. banc 1996), so the trial court's ruling was erroneous. Nevertheless, as this Court determined in resolution of Mr. Moore's first point, Mr. Moore was serving his sentence to the department of corrections when he was released from the Warren County jail. Therefore, the legal conclusion to which the sentencing judge testified was a correct statement of the law that did not prejudice Mr. Moore or result in manifest injustice or a miscarriage of justice, as required by Rule 30.20 for plain error relief.

### Conclusion

Because Mr. Moore was serving a sentence to the department of corrections when he was booked into the county jail and the opinion testimony of the sentencing judge did not result in manifest injus-

tice or a miscarriage of justice, the judgment is affirmed.

All concur.