Anthony Rex Gabbert, Judge
Vincent S. Barriere appeals from a judgment entered upon a jury verdict finding him guilty of first-degree assault pursuant to Section 565.050, RSMo 2000, armed criminal action pursuant to Section 571.015, RSMo 2000, unlawful possession of a firearm pursuant to Section 571.070, RSMo Cum. Supp. 2010, and unlawful use of a weapon pursuant to Section 571.030, RSMo Cum. Supp. 2014. He raises six points on appeal. Barriere contends that the circuit court, 1) abused its discretion or plainly erred in allowing testimony regarding Barriere's reputation for violence, 2) abused its discretion in allowing hearsay evidence, 3) erred in overruling Barriere's motion for judgment of acquittal at the close of the evidence, 4) abused its discretion in failing to sua sponte declare a mistrial upon learning Barriere had been prevented from viewing exhibits, 5) abused its discretion in allowing the submission of certain jury instructions, and 6) abused its discretion in allowing improper closing arguments by the State. We affirm.
Factual and Procedural Background
The evidence at trial, in the light most favorable to the verdicts, was that at approximately 7:30 p.m. on April 17, 2016, Daniel Wallace was on Maplewood Circle in Marshall, Missouri, speaking with Crystal Bowlen and other friends. Wallace and Bowlen observed a car driven by Marcus Lewis stop nearby, and observed Vincent Barriere exit the back passenger seat of that vehicle. Barriere then pointed a gun at Wallace and threatened to kill him. Wallace took off running and, as Wallace was running away, he pulled out his own gun and began shooting in Barriere's direction. Barriere returned fire. Wallace ran through a housing area and across South Grant Street where he ultimately jumped a fence and hid behind an air conditioning unit. As Wallace ran across South Grant, Lewis's vehicle approached and Barriere hung out of the window of the back passenger seat of Lewis's car and again fired at Wallace.
Wallace testified that Barriere had previously assaulted Wallace with his fists and had also "pistol-whipped" Wallace on his eyebrow causing Wallace to require emergency hospital care. Prior to the April 17, 2016, shooting, Wallace learned that Barriere was threatening to kill him due to a relationship Wallace had with a particular woman. Wallace purchased a gun upon hearing this.
Marcus Lewis testified that he owned a gold 2010 Chevrolet Malibu with a Chevrolet emblem that covered the back window.
*132 On the day of the shootings, Lewis was in Sedalia when Barriere asked him for a ride. Lewis and Barriere first went to Warrensburg where they picked up two women who were acquaintances of Barriere. After picking up the women, Lewis drove and Barriere was in the back passenger seat. The four traveled to Marshall to meet some people. They went into the Marshall Wal-Mart where Barriere purchased mechanic's gloves and zip ties. They then drove to Maplewood Circle and Lewis stopped his vehicle when he recognized Bowlen with a group of people. Barriere asked Lewis if one of the men with Bowlen was Wallace. Lewis indicated that he was. Lewis testified that Barriere then exited Lewis's vehicle and "took aim" on Wallace with a gun; Lewis was previously unaware that Barriere was armed. Lewis yelled at Barriere to get back in the car. Wallace then opened fire as he began to run between duplexes. Lewis testified that there was an immediate exchange of gunfire - "Wallace began to fire. Barriere began to fire back." Lewis drove away, first turning onto College Street and then toward South Grant Street. At Grant and College, Barriere fired a second round of shots at Wallace who then returned fire.
Several police officers testified for the State regarding their investigations into the April 17, 2016, shootings. Pettis County Sheriff's Deputy Jimmy Moore testified that he located and arrested Lewis at a motel outside of Sedalia and then conducted a consensual search of the motel room occupied by Lewis. After concluding the search, Moore identified Barriere as the driver of a Dodge Durango that arrived at the motel. The Durango left the motel parking lot and a police chase ensued terminating with Barriere's arrest.
Crime lab analyst Edward Garrison tested spent shell casings and bullet fragments found at the scene. Garrison confirmed that one of the spent casings was fired from Wallace's gun. Three of the spent casings were fired from Barriere's gun. One of the bullet fragments was not fired from Wallace's gun but could have been fired from Barriere's gun.
Defense witness Sidney Holt was one of the individuals in the car with Barriere and Lewis on the day of the shooting. In a statement made to police shortly before trial she said that she, her sister, and Barriere drove to Marshall about a week before the shooting with the intention of luring Wallace into the car and beating him up. She also said that when they all went to Wal-Mart on the day of the shooting, it was to buy "zip ties" and "burner gloves."
For the occurrences of April 17, 2016, Barriere was charged with Count I, first-degree assault, for shooting a firearm at Wallace in an attempt to kill or cause serious physical injury; Count II, armed criminal action, for committing the first-degree assault with a deadly weapon; Count III, unlawful possession of a firearm, for possessing a firearm while having been convicted of a felony; and Count IV, unlawful use of a weapon, for shooting a firearm from a motor vehicle at another person. Barriere was charged as and found to be a persistent offender, having pleaded guilty to aggravated escape from custody in 2005, sex offender registration violation in 2005, aggravated indecent liberties in 2004, and possession of a controlled substance in 2003. Following a jury trial, Barriere was found guilty on all counts. On April 24, 2017, the court sentenced Barriere to thirty years imprisonment on Count I, and fifteen years on Counts II, III, and IV to run concurrent to each other but consecutive to Count I. Barriere appeals.
Point I - Reputation Evidence
In his first point on appeal, Barriere contends that the trial court abused its *133 discretion or plainly erred in allowing Lewis, Wallace, and Moore to testify that Barriere had a reputation for violence. He argues that he had not placed his character or reputation in issue and it was improper for the State to first attack his character. He contends that the evidence regarding his violent reputation was given the "implied judicial imprimatur of the trial court and used by the State in its closing argument and submitted in jury instructions Nos. 12 and 13."
"The standard of review for the admission of evidence is abuse of discretion." State v. Primm , 347 S.W.3d 66, 70 (Mo. banc 2011). The trial court has broad discretion in choosing to admit evidence and we will not disturb this discretion unless it is against the logic of the circumstances and so unreasonable as to show a lack of careful consideration. State v. Freeman , 269 S.W.3d 422, 426 (Mo. banc 2008). "For evidentiary error to cause reversal, prejudice must be demonstrated." State v. Reed , 282 S.W.3d 835, 837 (Mo. banc 2009). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." State v. Forrest , 183 S.W.3d 218, 224 (Mo. banc 2006).
Prior to the introduction of evidence at trial, the following colloquy between the court, the State, and defense counsel occurred:
COURT: It's my understanding that there is an issue that we need to discuss with regards to the order of evidence that is going to be presented with regards to potential evidence as prior conflicts between victim and Defendant and reputation evidence of Defendant and victim.
STATE: Yes.
COURT: And it's my understanding, I think from both of you in prior discussions, that it is anticipated this is going to be a self-defense argument?
DEFENSE: Correct.
COURT: And the State then is wanting to put on evidence during their case in chief to go ahead and address the self-defense.
STATE: Yes. That would be our preference, or the option to reopen after we rest, one of the two.
DEFENSE: I'm fine with them presenting it in their case in chief.
COURT: Because you are contemplating offering a self-defense instruction?
DEFENSE: Yes.
COURT: Okay. I guess we will do it.
At trial, the State asked State's witness Marcus Lewis about Barriere's reputation for violence:
STATE: What is his reputation for violence?
LEWIS: I mean, they say he is a pretty bad dude, you know what I'm saying. You know, like, in reference to Wallace, they said that he pistol-whipped Wallace's eye out of his head before. Pretty sure there are other things.
The State also asked Wallace about Barriere's reputation for violence:
STATE: And at that time were you familiar with the Defendant's - or had you heard people talk about the Defendant and his reputation?
WALLACE: Yeah. He was known around Sedalia and stuff to be violent.
STATE: And of course you knew that personally as well?
WALLACE: Yes, sir. Kind of a big old guy.
Officer Moore was also asked about Barriere's reputation for violence:
STATE: Had you heard discussions of comments among other folks that live *134 in that general area in Pettis County about the Defendant's reputation?
MOORE: From what we were told, that he likes to use his muscle to scare people.
STATE: And so is it fair to say that based upon what you heard that he had a reputation for violence?
MOORE: Yes.
No objections were made to the reputation testimony of Lewis, Wallace, or Moore on the grounds that it was inadmissible character evidence.[1] At the close of evidence, Barriere submitted self-defense instructions to the jury, with the instructions stating that the jury could consider evidence introduced regarding the defendant's reputation for violence when determining the initial aggressor. The instructions submitted by Barriere further indicated that the jury could consider evidence of the prior relationship between Barriere and Wallace, including evidence of acts of violence, in determining the initial aggressor.
Generally, § 563.031.1 allows a person to use physical force upon another person to defend himself or a third person from what he perceives to be the use or imminent use of unlawful force by the other person. This defense is not available, however, if the defendant was the initial aggressor, unless he withdrew from the conflict § 563.031.1(1)(a). An initial aggressor is one who first attacks or threatens to attack another. If there is contradictory evidence as to who was the initial aggressor, it is a question of fact for the jury to decide.
State v. Hughes , 84 S.W.3d 176, 179 (Mo. App. 2002) (internal citations and quotation marks omitted). "In such cases, the trial court does not err in submitting the initial aggressor paragraphs of self-defense instruction to the jury, and in fact it is required to do so." State v. Abdul-Khaliq , 39 S.W.3d 880, 887 (Mo. App. 2001).
In State v. Gonzales , 153 S.W.3d 311 (Mo. banc 2005), the Court held the admission of a "victim's" reputation for violence, turbulence, and aggression was admissible on the question of who was the initial aggressor in a claim of self-defense. "Evidence of the victim's reputation for violence is logically relevant to two distinct issues in the self-defense context - the reasonableness of the defendant's fear of the victim and to prove that the victim was the initial aggressor." Id. at 312. "However, where a defendant raises the victim's reputation as a violent person before the jury, the defendant also raises his or her own reputation for violence." State v. Smith , 265 S.W.3d 874, 878 (Mo. App. 2008).
Here, Barriere made his plans known prior to trial that he would be claiming Wallace was the initial aggressor in the gunfight and that Barriere acted in self-defense in response to Wallace's behaviors. Consequently, the parties discussed with the court that there would be potential evidence of prior conflicts between Wallace and Barriere and reputation evidence of Wallace and Barriere. Barriere expressly agreed to allow the State to present its rebuttal evidence to Barriere's self-defense evidence in its case in chief. Evidencing a full understanding of the pre-trial agreement, Barriere made no objections when the self-defense rebuttal evidence was introduced in the State's case in chief.
We conclude that, by agreeing to allow the State to present self-defense rebuttal evidence in the State's case in chief, Barriere waived his present claim that the court erred in failing to sua sponte prevent *135 introduction of the evidence. Point one is denied.[2]
Point II - Hearsay Objection
In his second point on appeal, Barriere contends that the trial court abused its discretion in overruling Barriere's hearsay objection to testimony from Wallace that Kayla Benton told him Barriere "assaulted her because of making a post about (Wallace) and her sleeping together and said that he was planning on killing (Wallace)." Barriere contends that this was inadmissible hearsay because the State did not call or intend to call Benton to testify and was instead seeking to show the state of mind of Barriere at the time of the April 17, 2016, events. Barriere argues that Wallace's testimony, combined with the "reputation for violence" testimony prejudiced him because it "further impugned Barriere's reputation."
At trial, the State asked Wallace if he was carrying a gun the day of the April 17, 2016, shootings. Wallace indicated that he was. The State then asked if a "particular event or set of circumstances" caused him to purchase that firearm. Over Barriere's objection, Wallace testified that a "girl named Kayla Benton" called him and told him "that Vincent Barriere assaulted her because of making a post about me and her sleeping together and said that he was planning on killing me." The court indicated that it would allow Wallace's testimony over Barriere's objection only for the purpose of showing Wallace's state of mind at the time of the events.
A hearsay statement is an out-of-court statement offered to prove the truth of the matter asserted. Generally, hearsay statements are inadmissible. The hearsay rule does not render inadmissible what the victim said unless his statements are offered for the truth of what he said. An out-of-court statement that is not offered for its truth is not hearsay, and therefore, is admissible even if it does not fall within a recognized exception to the hearsay rule. Testimony of what another said offered in explanation of conduct rather than as proof of the facts in the other's statement is not inadmissible hearsay.
State v. Walker , 448 S.W.3d 861, 871 (Mo. App. 2014) (internal quotation marks and citations omitted).
Here, the court allowed Wallace's testimony that Benton told him of Barriere's plans to kill Wallace on the grounds that it explained Wallace's conduct in obtaining and carrying the firearm he had with him on April 17, 2016. This was relevant to the State's position that Wallace shot at Barriere only after Barriere pointed a gun at Wallace. This was not inadmissible hearsay and the court did not err in admitting it. Point two is denied.
Point III - Motion for Judgment of Acquittal
In his third point on appeal, Barriere contends that the trial court erred in overruling Barriere's motion for judgment of *136 acquittal at the close of all evidence and motion for new trial. He argues that the evidence did not show that Barriere was the initial aggressor or that he was "trying to kill" Wallace because the State's evidence demonstrated that Wallace shot at Barriere first.[3]
In determining whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, our review " 'is limited to a determination of whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.' " State v. Jones , 427 S.W.3d 191, 197 (Mo. banc 2014) (quoting State v. Moore , 303 S.W.3d 515, 519 (Mo. banc 2010) ). We accept as true all evidence and reasonable inferences that support the convictions, ignore all evidence and inferences to the contrary, and do not reweigh the evidence. Id. We view the evidence in the light most favorable to the guilty verdict. Id. at 199. We afford great deference to the jury's verdict and will not act as a "super juror." Id. at 198.
Wallace testified that Barriere first pointed a gun at him and threatened to kill him after Barriere exited Lewis's car. Wallace attempted to run away from Barriere and in doing so ran toward Grant Street. As Wallace was crossing Grant Street, Barriere fired at him again while hanging out of the passenger side back window of Lewis's car. Wallace jumped a fence and hid behind an air conditioner vent.
Lewis testified that after he stopped his car, Barriere got out of the car and pointed a gun at Wallace. Lewis testified that Wallace took off running in the opposite direction but turned and fired at Barriere. Barriere returned fire. After Wallace ran away, Lewis attempted to drive in the opposite direction of Wallace but ended up turning right instead of left on College Street because traffic was blocking a left turn. At the intersection of College Street and Grant Street, Barriere again fired at Wallace who then returned fire. Lewis testified that he was one hundred percent sure that Barriere fired first during this second round of gunshots.
Bowlen testified that she observed Barriere exit Lewis's vehicle, pull a gun out, and point it at Wallace. She observed Wallace take off running and then heard multiple gunshots.
We find sufficient evidence in the record from which a reasonable juror could conclude that Barriere was the initial aggressor by first drawing a gun on Wallace, threatening to kill Wallace upon drawing his gun, and by first shooting at Wallace at a different location after Wallace fled to that location. Point three is denied.
Point IV - Ineffective Assistance of Counsel
In his fourth point on appeal, Barriere contends that the trial court abused its discretion and erred by failing to sua sponte declare a mistrial upon learning Barriere had been prevented (because of ineffectiveness of counsel) from viewing exhibits published to State's witnesses and the jury. He contends that he was prevented *137 from fully participating in the preparation and execution of his defense after his request to see the projection screen used to display exhibits was disregarded by his attorney until the fourth State witness testified.
"A claim of ineffective assistance of counsel is not cognizable on direct appeal but must be presented pursuant to the procedure set forth in Rule 29.15 or 24.035 which provide for the development of a full and complete record." State v. Webber , 504 S.W.3d 221, 230 (Mo. App. 2016) (internal quotation marks and citations omitted). "These rules provide the exclusive procedure through which post-conviction relief because of ineffective assistance of counsel may be sought." Id. (Internal quotation marks and citations omitted).
Barriere contends, nevertheless, that pursuant to Goforth v. State , 775 S.W.2d 231, 233 (Mo. App. 1989), a movant that contends a trial court erred in failing to declare a mistrial sua sponte as a result of the ineffective assistance of counsel must raise the issue on direct appeal, otherwise the claim may not be raised in a post-conviction motion absent rare and exceptional circumstances. Barriere inaccurately summarizes Goforth . Appellant Goforth raised two claims in a Rule 29.15 motion. The first was that defense counsel's behavior amounted to ineffective assistance when defense counsel engaged in a near physical altercation with the prosecuting attorney during trial. As this was a claim of counsel's ineffectiveness, it was properly raised in a Rule 29.15 motion. The second was that the trial court should have sua sponte declared a mistrial after the "altercation." Our Eastern District addressed the ineffective assistance claim but concluded that the claim regarding trial court error should have been raised on direct appeal. Clearly, a physical altercation between defense counsel and the prosecution during a trial could necessitate corrective court action without requiring a determination regarding the effectiveness of counsel. Here, although Barriere argues that the trial court should have intervened, all of his arguments hinge on the trial court first having to conclude that counsel was ineffective. Consequently, this is not a claim of trial court error but of ineffective assistance of counsel.
Barriere's claim that the trial court failed to sua sponte declare a mistrial over his counsel's ineffectiveness is not cognizable on direct appeal. Accordingly, Point IV is denied without further review.
Point V - Jury Instructions
In his fifth point on appeal, Barriere contends that the trial court erred in allowing the submission of jury Instructions 12 and 13.[4] He contends that because the court erred in allowing impermissible evidence regarding Barriere's reputation for violence when no prior evidence of Barriere's character was introduced, instructions informing the jury that they could consider that evidence in determining the initial aggressor was in error.
We discussed in Barriere's first point on appeal that Barriere agreed to allow the reputation evidence to be presented in the State's case in chief because Barriere was claiming self-defense and ultimately intended to submit self-defense instructions to the jury. He did just that and submitted Instructions 12 and 13. "[A] defendant cannot complain about an instruction *138 given at his request." State v. Bolden , 371 S.W.3d 802, 806 (Mo banc 2012).
Barriere ignores that he submitted the instructions and suggests that the trial court had a duty to sua sponte give alternate instructions. It did not. Instructions 12 and 13 were patterned off of MAI-CR 406.06[5] which involves justification for use of force in self-defense. Barriere's defense at trial was that he acted in self-defense and evidence was adduced at trial that could have supported that defense. Self-defense instructions, therefore, were required and the court would have been in error not to give self-defense instructions. State v. Westfall , 75 S.W.3d 278, 280-81 (Mo. banc 2002).
MAI-CR 406.06 requires the court to give instructional language advising a jury that they may consider reputation evidence when determining the initial aggressor in an incident if such is supported by the evidence and requested in writing in proper form by either party. Inclusion of this language in Instructions 12 and 13 was at Barriere's behest as he submitted those instructions. Given the evidence, the court would have been required to include the reputation evidence language in the instructions if either Barriere or the State made the request. The court did not err in submitting Instructions 12 and 13 to the jury. Point V is denied.
Point VI - Closing Argument
In his sixth point on appeal, Barriere contends that the trial court erred in failing to sua sponte prevent the State from referencing Barriere's reputation for violence in closing argument. Barriere argues that the court initially erred in allowing the character evidence and this led the State to use this evidence against him in closing argument.
We addressed Barriere's challenge to the reputation evidence in Point I, finding no error in its introduction. Consequently, there can be no error in the court allowing reference to the evidence, over no objection, in closing argument. Point six is denied.
Conclusion
We conclude that, 1) the circuit court did not abuse its discretion or plainly err in allowing testimony regarding Barriere's reputation for violence as Barriere agreed to allow the State to present self-defense rebuttal evidence in the State's case in chief, 2) the circuit court did not abuse its discretion in allowing Wallace's testimony that Benton told him of Barriere's plans to kill Wallace as it was not inadmissible hearsay, 3) the circuit court did not err in overruling Barriere's motion for judgment of acquittal at the close of the evidence as the evidence was sufficient for a reasonable juror to conclude that Barriere was the initial aggressor, 4) Barriere's claim regarding counsel's ineffectiveness is not cognizable on direct appeal, 5) the circuit court did not err in allowing the submission of jury Instructions 12 and 13, and 6) the circuit court did not abuse its discretion in failing to sua sponte prevent the State from referencing Barriere's reputation for violence in closing argument.
We affirm the circuit court's judgment.
All concur.

Barriere made a hearsay objection to some of the testimony.

While Barriere ignores that he expressly agreed to introduction of this evidence in the State's case in chief, he recognizes that Counsel did not object to the evidence when it was introduced and suggests that this court review his claim for plain error if we find that Counsel's failure to object rendered his claim unpreserved. We find plain error review improper here. The court acknowledged an agreement reached by the parties that the parties had a right to enter into. Under such circumstances, a threshold showing of manifest injustice would be unattainable. "Waiver of plain error review occurs when an appellant affirmatively endorsed the challenged action of the trial court." State v. Rudolph , 456 S.W.3d 506, 508 (Mo. App. 2015).

Barriere argues in the body of his brief that the court erred in allowing Wallace's testimony regarding Benton's statements that Barriere was "trying to kill" Wallace. Although it is unclear, it appears that Barriere argues that, had this evidence not been allowed, there would have been insufficient evidence to support Barriere being the initial aggressor. We addressed the admissibility of Benton's statements to Wallace in Point II and found no error in their admission. Further, even if that testimony had been inadmissible, three separate witnesses testified that Barriere first drew his gun on Wallace.

He also challenges Instructions 8 and 11 because they reference Instructions 12 and 13.

MAI-CR 406.06 was modified July 1, 2018. As the modification applies to offenses committed on or after October 14, 2016, MAI-CR 4th 406.06 (7-1-17) applied to Barriere's April 17, 2016, offenses.