

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| OLIVER LIENHARD, | ) | No. ED110246 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | Labor and Industrial Relations |
| | ) | Commission |
| TOTAL LOCK & SECURITY, INC., | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| DIVISION OF EMPLOYMENT SECURITY, | ) | |
| | ) | Filed: December 27, 2022 |
| Respondents. | ) | |

## I. INTRODUCTION

Oliver Lienhard ("Lienhard") appeals from the decision of the Labor and Industrial Relations Commission (the "Commission"), which adopted the decision of the Division of Employment Security (the "Division") denying Lienhard's claim for unemployment benefits after his employer, Total Lock & Security, Inc. ("Total Lock"), terminated his employment for misconduct based on its claim he failed to follow Total Lock's unwritten COVID-related social distancing policy. While Lienhard brings five points on appeal, we need only address Lienhard's fourth point, which challenges the Division's reassignment of this matter from the hearing officer who conducted the hearing and heard the live witness testimony to a different hearing officer

who wrote the decision. Lienhard argues that the reassignment does not comply with applicable state regulations and warrants reversal.

Because, in this case of first impression, the Division failed to comply with 8 CSR 10-5.015(11)(A)'s requirement to provide a reason why the original hearing officer "cannot complete" the appeal before reassigning it to another hearing officer, we reverse and remand for a new hearing on all issues.

## II.    FACTUAL AND PROCEDURAL HISTORY

Total Lock operates a locksmith business in the St. Louis area. From February 2019 through April 2020, Lienhard worked primarily in Total Lock's warehouse. His direct supervisor was Pat Mitchell ("Mitchell"), Total Lock's General Manager.

On April 2, 2020, shortly after the March 2020 onset of the COVID-19 pandemic, Total Lock reduced Lienhard's hours to two days per week to begin the following week. As a result, Lienhard immediately filed a claim for partial unemployment benefits with the Division of Employment Security (the "Division"). Then, on April 6, 2020, Mitchell terminated Lienhard's employment. According to Lienhard, Mitchell stated there was no work for him.

Total Lock, through its office manager Cindy Herring, objected to Lienhard's claim, asserting that he was terminated for failing to adhere to its efforts to maintain social distancing during the Pandemic (the "Policy").[1] The objection read:

> Total Lock & Security is an essential company. When the Covid 19 virus hit the St. Louis area [Total Lock] followed the guidelines of the CDC and initiated the Social Distancing within the organization. [Lienhard] had to be told numerous times each day he worked to follow the guidelines by supervisors. [Lienhard] continued to ignore the policy and would not keep the proper distance away from people and for the safety of other employees and customers we had to part ways.

---

[1] Throughout these proceedings, the parties and the Appeals Tribunal have interchangeably referred to Total Lock's efforts to have its employees practice social distancing during the Pandemic as a "policy," "protocols," and "guidelines." Because the term "policy" was used most frequently, we employ it here for the sake of consistency and clarity.

The specifics of Total Lock's unwritten Policy and whether Total Lock warned employees that non-compliance could result in termination are absent from the record. The record is also unclear when or how Total Lock communicated the Policy to Lienhard.

In its September 8, 2020 decision, a Division deputy denied Lienhard's claim upon its conclusion that he engaged in "misconduct connected with work," finding that he violated Total Lock's social distancing policy by failing to "maintain the proper safety distance from other employees."

Lienhard timely appealed the deputy's decision to the Division's appeals tribunal (the "Appeals Tribunal"), which held a telephone hearing on October 27, 2021, with appeals Referee Muhammad presiding. Lienhard appeared *pro se*, and testified to his work history, how his hours were cut upon the onset of the Pandemic, and that he was fired due to lack of work, and not for misconduct relating to social distancing because he did "not know what their definition or policy of 'social distance'" was since Mitchell "never said a word to me about social distancing."

Mitchell appeared on behalf of Total Lock, and testified that in addition to the lack of work, Lienhard was terminated for violating the Policy. Mitchell stated the Policy was Total Lock's attempt to follow the CDC's then-current social distancing recommendations. Other than workplace signs to observe "social distancing" and stay "six feet apart," the Policy was unwritten and the record is silent whether the Policy was required or merely recommended.

At the conclusion of the hearing, Muhammad stated, "[b]ased on the record we have created today, I'll prepare a written decision." Before a written decision was issued, the matter was reassigned to appeals Referee Sharp. The record is silent as to why Muhammad did not write the decision and silent as to *any* reason the matter was reassigned to Sharp.

3

On November 16, 2021, Sharp issued the Appeals Tribunal's decision denying Lienhard's claim (the "Decision"). In his decision, Sharp found there was competent and substantial evidence that Lienhard was terminated for misconduct, concluding that Lienhard knew about Total Lock's policy, but violated it by being "over the shoulder" of fellow employees and "face to face" with customers.

Lienhard timely filed an application for review with the Commission, which on December 6, 2021, affirmed the Decision of the Appeals Tribunal, adopting Sharp's decision as its own. This appeal follows.

### III. STANDARD OF REVIEW

Our review of the Commission's decision is governed by the Missouri Constitution and § 288.210.[2] *Mickles v. Maxi Beauty Supply, Inc.*, 566 S.W.3d 274, 276-77 (Mo. App. E.D. 2019); *see also Difatta-Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 595 (Mo. banc 2008). We review whether the Commission's decision is "authorized by law" and "supported by competent and substantial evidence upon the whole record." *Mickles*, 566 S.W.3d at 277 (quoting Mo. Const. art. V, § 18). "[Section] 288.210 provides that this Court may modify, reverse, remand for rehearing, or set aside the Commission's decision upon finding (1) that the Commission acted without or in excess of its powers; (2) that the decision was procured by fraud; (3) that the facts found by the Commission do not support the decision; or (4) that there was not sufficient competent evidence in the record to support the decision. *Id.*; *see also Jackson-Mughal v. Division of Employment Sec.*, 359 S.W.3d 97, 100 (Mo. App. W.D. 2011).

---

[2] All statutory references are to RSMo (2016), unless otherwise indicated.

## IV.    DISCUSSION

### A.    Introduction

While Lienhard raises five points on appeal, we find point four to be dispositive.[3]  In his fourth point, Lienhard argues that the Commission acted without or in excess of its powers because, contrary to applicable statutes and state regulations, the appeals referee that heard the claim did not write the decision.

The issue before us is whether the reassignment of this claim from one referee, who heard the case, to another referee, who wrote the decision, complied with 8 CSR 10-5.015(11)(A), which governs the reassignment of hearing officers when the original hearing officer "cannot complete disposition of an appeal."  We find it did not, and therefore, we reverse and remand for a new hearing on all issues.

### B.    Applicable Law

Section 288.190.3 permits the Director to transfer a pending appeal from one appeals referee to another.  Moreover, § 288.190.2 mandates that the conduct of hearings must comply with applicable state regulations.  An appeals tribunal possesses "no authority to act beyond or contrary to the Division's regulations in force and effect."  *Jackson-Mughal*, 359 S.W.3d at 103.

The specific state regulation applicable to this appeal is 8 CSR 10-5.015(11), which governs the reassignment of hearing officers: "A hearing officer may be reassigned under the

---

[3] Lienhard's first three points argue that the Commission erred in finding that he was ineligible for unemployment benefits because: (1) the decision was not supported by competent and substantial evidence in that the record shows that Total Lock laid him off because of a lack of work due to the Pandemic; (2) the facts found by the Commission do not support the decision in that the alleged violations of the Policy do not meet the definition of "misconduct" under § 288.030.1(23); (3) the decision was not supported by competent and substantial evidence in that the record does not show that he engaged in "misconduct," as defined in § 288.030.1(23).  In his fifth point, Lienhard argues that the reassignment of his case to a new hearing officer deprived him of his rights to due process and a fair hearing.

following conditions: (A) If for any reason, a hearing officer cannot complete disposition of an appeal, the case shall be assigned to another hearing officer."[4]

Another applicable regulation, 8 CSR 10-5.050(1), provides: "Upon conclusion of the hearing, **the hearing officer** shall prepare a written decision. The decision shall be based solely upon competent and substantial evidence contained in the official record" (emphasis added).

## C.    Analysis

The record in this case does not reflect *any* reason for the reassignment. By failing to demonstrate in the record the reason the first referee could not complete the appeal by writing the decision, the Division failed to comply with 8 CSR 10-5.015(11)(A), which requires the "reason" a hearing officer cannot complete the appeal.[5] As an issue of first impression, we hold that when the Division reassigns an appeal pursuant to 8 CSR 10-5.015(11)(A), the record must reflect the *specific* reason the original hearing officer cannot complete disposition of the appeal. This is necessary for appellate courts to perform their essential function of judicial review of agency decisions and compliance with governing regulations. Therefore, consistent with our standard of review pursuant to article V, section 18 of the Missouri Constitution and § 288.210, we conclude that the Commission acted without or in excess of its powers. *Mickles*, 566 S.W.3d at 277; *see also Jackson-Mughal*, 359 S.W.3d at 103.

We interpret administrative regulations according to the general rules of statutory construction. *Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 614 (Mo. banc 2016). Statutory interpretation is an issue of law that Missouri appellate courts review *de novo*. *Id*. "Regulations

---

[4] As used in Chapter 5 of Division 10 of Title 8 of the Missouri Code of State Regulations, the term "hearing officer" is defined as follows: "The person responsible for ruling on procedural matters, ***conducting the hearing, and preparing a final appealable judgment from evidence presented in the hearing***. The term hearing officer shall include the terms 'Referee' and 'Appeals Tribunal' as defined in section 288.030.1, RSMo." 8 CSR 10-5.010(2)(D) (emphasis added).

[5] We note that although 8 CSR 10-5.015(11) permits reassignment under the additional circumstances referenced in sub-parts (B) – (D), none of those circumstances are applicable here.

should be interpreted reasonably, and absurd interpretations should not be adopted." *Dept. of Social Servs., Div. of Medical Servs. v. Senior 19 Citizens Nursing Home Dist. of Ray County*, 224 S.W.3d 1, 9 (Mo. App. W.D. 2007) (citing *Budding v. SSM Healthcare Sys.*, 19 S.W.3d 678, 681 (Mo. banc 2000)).

"When interpreting a statute, the primary goal is to give effect to legislative intent as reflected in the plain language of the statute." *Stiers*, 477 S.W.3d at 615 (quoting *State v. Moore*, 303 S.W.3d 515, 520 (Mo. banc 2010)). The primary rule of statutory construction is "to give effect to legislative intent in the plain language of the statute at issue." *Id*. (quoting *Parktown Imports, Inc. v. Audi of America, Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009)). Furthermore, when interpreting a statute, appellate courts "must give meaning to every word or phrase of the legislative enactment." *Moore*, 303 S.W.3d at 520.

We now turn to the rather simple language of 8 CSR 10-5.015(11)(A): "If for any reason, a hearing officer <u>cannot</u> complete disposition of an appeal, the case shall be assigned to another hearing officer" (emphasis added). Although broad, the Division's authority under this regulation is not unlimited. While sub-part (A) begins with the phrase "[i]f for any reason," we must give effect to the word "cannot," which clearly limits the authority of the Division to reassign appeals. However, State regulations do not define the word "cannot" as used in 8 CSR 10-5.015(11)(A), and we are not aware of any authority that does. We first address the meaning here of the word "cannot." While perhaps self-evident, we observe that Black's Law Dictionary (5th ed. 1979) defines "cannot" as: "Denotes that one is not able (to do some act)." Thus, this regulation requires there be a reason the hearing officer has become unable to complete the appeal before the Director is authorized to reassign the matter to a different hearing officer.

With this holding, we do not seek to infringe on the Director's aforementioned statutory and regulatory authority to manage its personnel and dockets.  We do, however, insist upon compliance with those statutory and regulatory authorities, such as the regulation at issue here.

Finally, we observe that the compliance we have ordered here may also serve the important considerations of ensuring due process and fairness, which may be implicated when an appeal, such as this one, is transferred *after* the hearing but before the decision is written.[6]  This is especially important where, as here, the denial of the benefits claim hinged on several key credibility determinations.  These considerations, therefore, support our insistence that when exercising its authority to transfer an appeal to a new hearing officer, the Director must state the specific reason that the originally assigned hearing officer cannot complete the task.

For these reasons, we hold that the Commission acted without or in excess of its powers and order a new hearing on all issues, with the specific instruction that the hearing officer who hears the live testimony on rehearing, whether by telephone or in-person, shall also issue the final decision, except as expressly permitted under 8 CSR 10-5.015(11).

Point four is granted.

---

[6] We note that Missouri courts have repeatedly recognized that administrative hearings should be treated like judicial trials for purposes of analyzing issues of fundamental fairness and due process.  *See, e.g., Jones v. State Dept. of Public Health and Welfare*, 354 S.W.2d 37, 40 (Mo. App. 1962) (recognizing that "it is our view that an administrative proceeding … should be conducted as much in accordance with fundamental principles of justice and fairness as are judicial trials"); *Deffenbaugh Indus., Inc. v. Potts*, 802 S.W.2d 520, 527 (Mo. App. W.D. 1990) (recognizing that the procedures which lead to an administrative decision "must comport with those rudiments of fair play and due process that befit a judicial trial"); and *Scrivener Oil Co. v. Crider*, 304 S.W.3d 261, 271-72 (Mo. App. S.D. 2010) (recognizing that "[t]he procedural due process requirements of fair trials by fair tribunals applies to an administrative agency acting in an adjudicative capacity").

## V. CONCLUSION

We reverse the Commission's decision denying Lienhard's unemployment benefits claim and remand for a new hearing consistent with this opinion and applicable law.

_____
Kelly C. Broniec, Presiding Judge

Philip M. Hess, J. and
James M. Dowd, J. concur.